Hilary DAVIS, Individually and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

William J. PAGE, Jr., Etc. et al., Defendants,

Circuit Judges Dixie Herlong Chastain, Etc. et al., Defendants-Appellants.

No. 78–2063.

United States Court of Appeals, Fifth Circuit.

March 23, 1981.

Sidney H. McKenzie, III, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellants.

Michael R. Masinter, Miami, Fla., for plaintiffs-appellees.

Robert L. Walker, Abigail English, James Morales, and John F. O'Toole, San Francisco, Cal., for amicus, National Legal Aid & Defender Ass'n.

Before GODBOLD, Chief Judge, BROWN, COLEMAN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, THOMAS A. CLARK, and WILLIAMS, Circuit Judges.*

VANCE, Circuit Judge:

This class action challenges the constitutionality of child dependency proceedings against indigent parents in the Circuit Court of Dade County, Florida, when parents are not provided with counsel at the state's expense. The district court granted summary judgment to the plaintiff. *Davis v. Page*, 442 F.Supp. 258 (S.D.Fla.1977), and a panel of this court affirmed except as to the issue of attorneys' fees. *Davis v. Page*, 618 F.2d 374 (5th Cir. 1980).

On January 30, 1976, Hilary Davis left her home after her husband broke the arm of her 14-month old baby, Carl Davis. She took her son to a hospital where they both spent the night. The next day, after telling social workers at the hospital that she was leaving her husband and would seek a divorce, she was informed that she would not be permitted to take her son with her. A few days later, the Florida Department of

---

* Judge Sam D. Johnson did not participate in this decision.

Health and Rehabilitative Services (DHRS) filed dependency proceedings in the Juvenile and Family Division of the Circuit Court seeking to remove Carl from her custody. At an emergency hearing on February 4, the judge advised Ms. Davis to have counsel at the adjudicatory proceeding a month later. He made no offer to appoint counsel. Ms. Davis was indigent, and although she repeatedly attempted to secure counsel, her efforts were unsuccessful.

The adjudicatory hearing proceeded in accordance with Fla.Stat. § 39.408(1)(b).[1] Such hearings are formal adversary proceedings. The state is represented by counsel and is required to prove its case by a preponderance of the evidence under the rules of evidence generally applicable to civil proceedings.

At the adjudicatory hearing, Carl Davis was declared to be a dependent child and was committed to the temporary custody of DHRS.[2] Although Ms. Davis mistakenly believed that she would be separated from Carl for only a few weeks, the phrase "temporary custody" belies the serious consequences of an adjudication of dependency. Temporary custody continues until terminated by the court or until the child reaches the age of 18. Fla.Stat. § 39.41(1)(c). While a parent may petition to regain custody of his or her child, the nature of subsequent proceedings differs significantly from the original adjudication hearing. In these proceedings, known as "disposition hearings," the state no longer bears the burden of proof. *Compare* Fla.Stat. § 39.408(1)(b) *with* Fla.Stat. § 39.408(2) *and* Fla.Stat. § 39.41. "Evidence that may be totally inadequate to deprive a parent of the custody of his child in the first instance may be altogether adequate to support the court's refusal to restore custody to the parent once the child had become a ward of the state." *Pendarvis v. State*, 104 So.2d 651, 652 (Fla.Dist.Ct.App.1958). Evidence may be admitted at disposition hearings which would be inadmissible at an adjudicatory hearing. Fla.Stat. § 39.408(2).

Ms. Davis was not advised by the judge at the adjudicatory hearing of her right to appeal under Fla.Stat. § 39.413. After the 30-day appeal period had expired, she retained counsel. On May 11, 1976, she filed a Petition for Writ of Habeas Corpus in the Florida Supreme Court seeking the return of her son. The Florida Supreme Court denied her petition without opinion and this litigation followed.

■ At the outset, we note that jurisdiction is properly founded on 28 U.S.C. § 2241 et seq. and 28 U.S.C. § 1343(3) and (4). Appellants argue, for the first time in this litigation, that the action should be dismissed under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We disagree. At the time she filed her federal action, the adjudicatory proceeding had been completed and Ms. Davis had exhausted the remedies available to her under Florida law. The comparatively informal disposition hearings, in which the state no longer carries the burden of proof, are not a continuation of the adjudicatory proceeding. The parent may not relitigate the original adjudication. Since this action did not seek to enjoin a state proceeding but sought rather to vacate a previous judgment, the considerations of comity and federalism that underlie the *Younger* doctrine do not require the federal courts to abstain from taking jurisdiction of Ms. Davis' claim. *Compare* the present case *with Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (suit seeking to enjoin

---

1. The statutes in effect at the time of the events in this action have been replaced by a new act providing for rules in dependency proceedings. The citations in this opinion refer to the current statute. The provisions cited are substantially the same in both acts.

2. Once a child has been adjudicated dependent the court may (1) place the child in his own home or the home of a relative under protective supervision; (2) commit the child to a licensed child-care agency; (3) commit the child to the temporary legal custody of DHRS; or (4) permanently commit the child to DHRS or a licensed child-placing agency. Fla.Stat. § 39.-41(1).

child custody proceeding barred by *Younger*).[3]

 Ms. Davis was also entitled to invoke federal habeas corpus jurisdiction. The state does not question that at the time this federal action was filed, Carl Davis was in custody pursuant to state judgment. It argues, however, that since the state court returned Carl to his mother before the district court rendered judgment, the habeas claim had become moot. This contention lacks merit. If habeas jurisdiction exists at the outset of a case, it is not defeated by the applicant's subsequent release from custody. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). In addition, the state court order returning Carl placed him under the continuing supervision of DHRS. Ms. Davis had to visit regularly with her social worker, permit her social worker to inspect her home, and permit her social worker to exercise general supervisory authority over her parental decisions and actions. *See Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (parolee "in custody" within meaning of habeas statute in view of significant restraints on liberty even after release from prison). We decline the state's invitation to declare habeas relief inappropriate whenever the custody of a child is at stake. While domestic relations are normally within the province of state courts, nothing in the history of the habeas writ suggests that it should be denied merely because the custody at issue results from an adjudication involving child custody.[4] *See Lehman v. Lycoming County Children's*

*Services Agency*, (No. 79–2466, 3d Cir. July 23, 1980). *But see Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978).

 We turn now to the central question of this appeal, whether the failure to offer Ms. Davis the assistance of counsel violated constitutional requirements of due process.

It is not questioned that Ms. Davis and similarly situated parents have a liberty interest at stake in the child dependency hearings that is protected by the due process clause of the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The Supreme Court has recognized the right to family integrity and autonomy in a number of contexts. *See, e. g., Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

To determine whether due process in this case includes the right to counsel, we must examine more precisely the weight of the liberty interest presented by the plaintiff and the competing interests asserted by the government. The Supreme Court has noted that three distinct factors are involved in such a determination:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

---

**3.** Appellants have not urged us to consider whether judicial immunity bars declaratory or injunctive relief and we do not. *Cf. Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980) (qualified immunity to a § 1983 action is a defense and burden of pleading rests with defendant). *See generally, Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 735 n. 13–14, 100 S.Ct. 1967, 1976 & n. 13–14, 64 L.Ed.2d 641 (1980) (discussing applicability of judicial immunity in § 1983 actions for declaratory or injunctive relief). Neither have appellants argued that judges are not appropriate defendants in an action to declare a statute unconstitutional, and we express no opinion on that question. We do not raise it

*sua sponte* because injunctive relief against the defendants was also sought.

**4.** Indeed, the common law offers examples of the use of the habeas writ in child custody cases. *See* discussion in *Jones v. Cunningham*, 371 U.S. 236, 239, 83 S.Ct. 373, 375, 9 L.Ed.2d 285 (1963). It is also, of course, clear that the usual deference to state courts in domestic law questions will not bar federal review of constitutional issues. *See, e. g., Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953).

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

We consider first Ms. Davis' interest in the dependency proceeding. The process to which she is entitled is determined in part by the extent to which she may be "condemned to suffer grievous loss." *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). It is difficult to imagine a loss more grievous than that of a parent deprived of his or her child. The bond between parent and offspring is one of the central facts of nature as well as of society, and the Supreme Court has frequently noted the fundamental character of this relationship. The interest of a parent in raising his or her child has been described as "essential," *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), and "far more precious ... than property rights," *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). As the Court stated in *Stanley v. Illinois,* 405 U.S. at 651, 92 S.Ct. at 1212, "It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'" The recognized weight of Ms. Davis' interest demands that she receive the full procedural protection necessary to avoid the erroneous deprivation of that interest.

Our next inquiry thus becomes whether the provision of counsel is likely to alleviate significantly the risk that a child will erroneously be found dependent. The facts of this case testify to the inadequate protection afforded to a fundamental liberty interest when a parent, unfamiliar with the judicial process and easily intimidated by its workings, opposes the legal apparatus of the state. Ms. Davis was ignorant of the substantive governing law, unaware even that the dependency hearing might result in an indefinite separation from her child. Unacquainted with the rules of evidence, she was unable to challenge hearsay and opinion testimony. The trial judge found that "[s]he sat silently through most of the hearing ... fearful of antagonizing the social workers" and that she "was little more than a spectator in the adjudicatory proceeding." *Davis v. Page,* 442 F.Supp. at 260. This case is far from unique.[5] The assistance of counsel is needed "to cope with problems of law, to make skilled inquiry into the facts [and] to insist upon regularity of the proceedings...." *In re Gault,* 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967) (footnote omitted).

Finally, we must examine the countervailing interests asserted by the state. Insofar as the state appears in dependency proceedings in its role as parens patriae, it shares the interest of parent and child in taking all measures which will significantly decrease the likelihood of an erroneous decision. The state argues, however, that the financial cost of offering counsel to indigent parents in these proceedings outweighs the value of the protection provided by counsel. We disagree. Where the right to counsel is essential to the protection of a liberty so basic to the fabric and philosophy of our society, the interest in saving an uncertain sum will not defeat that right.

Although the state urges us to accept the case-by-case method used by the Florida courts to determine when to provide counsel, we believe that the facts of this case dramatically illustrate the pitfalls of such an approach. The factors by which Florida courts decide whether to offer counsel are

---

5. *See, e. g., In re A. Z.,* 383 So.2d 934 (Fla.Dist. Ct.App.1980), which described an adjudicatory hearing in which the court conducted the questioning of the witnesses, none of whom were placed under oath, and did not permit the parent to question witnesses. The court in the case described relied on various written reports, none of which were identified, authenticated or placed in evidence, and none of which were furnished to the parent.

often unknowable in advance of the proceeding.[6] In our view the complexity of these proceedings always necessitates the offer of counsel to avoid the erroneous deprivation of a fundamental liberty interest. The right involved is absolute and should not be subject to the discretion of the trial judge. We thus hold that in a formal adjudication of dependency under Florida law, where prolonged or indefinite deprivation of parental custody is threatened, due process requires that an indigent parent be offered counsel and that counsel be provided unless a knowing and intelligent waiver is made.[7]

In so holding, we draw support from Supreme Court rulings that have mandated the offer of counsel when fundamental liberty interests have been at stake. Some of these have involved criminal prosecutions. See, e. g., *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v.*

*Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court ordered that counsel be provided in juvenile cases denominated civil proceedings because the deprivation of liberty threatened was comparable to that involved in adult criminal proceedings. The interest in family integrity is one comparable to the interest in being free of restraint. To offer counsel when a single day in jail may be at stake, but to deny counsel to an indigent when the destruction of his or her family is threatened, does not accord with our concept of due process.[8]

We note also that the great majority of courts that have considered the issue have found a right to counsel in proceedings where prolonged or permanent separation of parent and child is threatened,[9] and that the majority of states have recognized the essential role of counsel in these hearings by enacting statutes which provide a right to counsel for indigent parents.[10]

**6.** In *Potvin v. Keller*, 313 So.2d 703, 706 (Fla. 1975), the Florida Supreme Court announced five factors to be considered in determining whether counsel is necessary: (1) the potential length of parent-child separation; (2) the extent of restrictions on parental visitation; (3) the presence or absence of parental consent; (4) the presence or absence of disputed facts; (5) the complexity of the proceeding in terms of witnesses and documents.

**7.** Our holding today does not affect the state's ability to remove a child from his or her home temporarily in an emergency situation where life or safety is immediately threatened.

**8.** We find the liberty interest in this case to be more comparable to that in *In re Gault*, than to those involved in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (holding that a probationer's right to counsel in a probation revocation proceeding is to be determined on a case-by-case approach for prison disciplinary proceedings) and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (adopting the case-by-case approach for prison disciplinary proceedings.) The proceedings in these cases involved the conditional liberty interest of a defendant who has already been adjudicated a criminal in a proceeding where he was entitled to representation by counsel. Also, the Court specifically relied on the fact that the proceedings in *Gagnon* and *Wolff* were not adversary in nature. Indeed, the state was not represented by counsel. The

contrast on both these points with the proceeding before us is unmistakable.

**9.** *See, e. g., Smith v. Edmiston*, 431 F.Supp. 941 (W.D.Tenn.1977); *Danforth v. State Department of Health and Welfare*, 303 A.2d 794 (Me. 1973); *In re Friesz*, 190 Neb. 347, 208 N.W.2d 259 (1973); *Crist v. Division of Youth and Family Services*, 128 N.J.Super. 402, 320 A.2d 203, *modified*, 135 N.J.Super. 573, 343 A.2d 815 (1974); *In re B.*, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (1972); *In re Mitchell*, 251 Or. 114, 444 P.2d 15 (1968); *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66 (1980); *In re Adoption of R. I.*, 455 Pa. 29, 312 A.2d 601 (1973); *In re Welfare of Myricks*, 85 Wash.2d 252, 533 P.2d 841 (1975); *State ex rel. Lemaster v. Oakley*, 157 W.Va. 590, 203 S.E.2d 140 (1974); Annot., 80 A.L.R.3d 1141 (1977). *See also, Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974) (mandating a case-by-case determination of the need for counsel); *Brown v. Guy*, 476 F.Supp. 771 (D.Nev.1979). *But see, In re Cager*, 251 Md. 473, 248 A.2d 384 (1968).

**10.** *See, e. g.,* Ala.Code tit. 12, § 15–63(b) (1975); Ariz.Rev.Stat.Ann. § 8–225 (Cum.Supp. 1979); Colo.Rev.Stat. § 19–1–106(1)(b)(ii) (1973); D.C. Code Ann. § 16–2304(b) (Supp. V 1978); Ill. Ann.Stat. ch. 37, § 701–20(1) (Smith-Hurd Cum.Supp. 1979); Iowa Code Ann. § 232.89.1 (West Cum.Supp. 1979); Me.Rev.Stat.Ann. tit. 22, § 4005.12 (Supp.1979); Md.Cts. & Jud.Proc. Code Ann. § 3–821 (1980); Mass.Ann.Laws ch.

█ Finally, it should be clear that this decision in no way obliges the State of Florida to provide counsel when two purely private parties litigate the issue of child custody. Today's holding applies only when the state actively interferes with the integrity of the family, not when it adjudicates the competing claims of private parties. *See Rowell v. Oesterle,* 626 F.2d 437 (5th Cir. 1980).

The relief we affirm is declaratory and renders null and void the state decree determining Carl Davis to be a dependent child. We believe that injunctive relief is inappropriate since there is no indication that the judges of the State of Florida will not conform to the dictates of the Constitution. We therefore vacate the injunction entered by the district court. Since appellant has conceded that attorneys' fees are inappropriate in this case, we also reverse the district court on this issue.

AFFIRMED IN PART, VACATED and REVERSED IN PART.

COLEMAN and CHARLES CLARK, Circuit Judges, would have deferred decision pending the Supreme Court's decision in 79–6423, *Lassiter v. Department of Social Services of Durham County, North Carolina.*

JOHN R. BROWN, Circuit Judge, with whom COLEMAN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, GARZA, HENDERSON and REAVLEY, Circuit Judges, join, dissenting:

What this case involves was succinctly described in my panel dissenting opinion (with partial concurrence):[1]

Once again this Court in the high name of the Constitution becomes involved by the majority in the most direct way in domestic problems wisely left to the states. Not only that, it is done by an order declaring unconstitutional prior decisions of the state's highest tribunal through the medium of an attack directed against innocent local state trial circuit judges, all of whom—including all other judges high and low in the whole state of Florida—are now categorically directed, without discretion or consideration of real needs, to conform to our edict. I think all of the principles of Federalism and the demands of comity are defeated by this action and I therefore dissent from this intrusion.

*Davis v. Page,* 618 F.2d 374, 386 (5th Cir. 1980).

Domestic relations is an area of law in which Federal Courts traditionally have deferred to State Courts. *Sosna v. State of Iowa,* 419 U.S. 393, 404, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 543 (1975); *DeSylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415, 1427 (1956); *Bell v. Bell,* 411 F.Supp. 716 (W.D.Wash. 1976). Federal Courts have always preferred to abstain from answering questions of law, such as those contained in domestic relations suits, which the states are by nature best equipped to deal with. *See Moore v. Sims,* 442 U.S. 415, 429–30, 99 S.Ct. 2371, 2380, 2381, 60 L.Ed.2d 994, 1007 (1979); *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83–84, 95 S.Ct. 870, 874–75, 43 L.Ed.2d 32, 39 (1975); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.2d 1424 (1942). Although I refrain from asserting that there are no instances in which it is appropriate for Federal Courts to in-

---

119, § 29 (Michie/Law Co-op Cum.Supp. 1980); Minn.Stat.Ann. § 260.155(2) (West 1971); Neb. Rev.Stat. § 43–205.06 (1943); N.M.Stat.Ann. § 32–1–27 F (1978); N.Y.Jud.Fam.Ct.Act § 262(a) (McKinney 1975 & Supp. 1979); N.D. Cent.Code § 27–20–26 (1974); Ohio Rev.Code Ann. § 2151.352 (Page 1976); Okl.Stat.Ann. tit. 10, § 1109(b) (West Cum.Supp. 1979); Ore.Rev. Stat. § 419.498(2) (1977); S.D. Codified Laws Ann. § 26–8–22.2 (1976); Va.Code § 161–266(c)(2) (Cum.Supp. 1980); Wis.Stat.Ann. § 48.23 (West 1979). The same position is

taken in the Uniform Juvenile Court Act § 26(a), and by the IJA–ABA Joint Commission on Juvenile Justice Standards, Standards Relating to Counsel for Private Parties § 2.3(b) (1976).

1. Further reflection and study convince me that my concurrence in part in the panel opinion was a mistake since I believe the habeas corpus was not a permissible vehicle to reach the Court's due process decision.

trude in domestic relations matters, I believe that such intrusion should only take place with proper awareness of the roles of Federal and State Courts and then only rarely and in extreme situations.

I am first concerned by this Court's conclusion and its operative order the Federal habeas corpus relief is appropriate in this case. The origins of this case are somewhat curious. The original complaint was in two counts. One count was stated as a class action for declaratory and injunctive relief presumably under 42 U.S.C.A. § 1983 against all of the judges of the Juvenile and Family Division of the Circuit Court of Dade County, Florida, none of whom was charged with having custody of the minor. In a separate count, Ms. Davis sought a writ of habeas corpus against the Secretary of the Florida Department of Health and Rehabilitative Services and three subordinate officials of that Department.

What started out primarily as a class action against state judges has now been framed by this Court as an action based essentially on Federal habeas. Although the majority discusses the appropriateness of habeas relief in this case there is no discussion of the 42 U.S.C. § 1983 cause of action upon which jurisdiction under 28 U.S.C. § 1343(3) and (4) is presumably based.

Clearly, Federal habeas is an inappropriate avenue of relief as respects the action against the state judges named as defendants, and more particularly as the vehicle for the sweeping declaration binding on all Florida Judges. There is no suggestion that the judges themselves at the time the Federal suit was filed had custody of Carl Davis.

I also believe that Federal habeas is an inappropriate avenue of relief as respects the action against the Florida Department

of Health and Rehabilitative Services. My concerns are essentially the same as those expressed by the First Circuit in *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978), in which that Court concluded that Federal habeas relief was not available to assert the rights of the parent, not that of the child, in a case where, as here, a parent contested the involuntary termination of parental rights. It should be pointed out that in a recent unpublished opinion of the Third Circuit reached a conclusion on this same question contrary to that of the First Circuit. However, that opinion was issued over a sharp dissent. Subsequently, the case was put en banc and has recently been reargued en banc. *Lehman v. Lycoming County Children's Services Agency*, (No. 79–2466, 3d Cir. July 23, 1980, reargued en banc November 17, 1980).

My concern with the assumption of Federal habeas in this case is not merely a matter of jurisdictional quibbling. As recognized by the Court in *Sylvander*:

Federal habeas when applied to persons under state control is a procedure of unique potency within the Federal-state framework, having far different and more far-reaching consequences than a state's utilization of habeas within its own system.

584 F.2d at 1111. Unlike other avenues of relief, under Federal habeas a Federal District Court can assume jurisdiction of a case regardless of prior state proceedings—res judicata and collateral estoppel are no bar. This Court's decision today represents the first recognition by this Circuit of the availability of Federal habeas relief in a state child custody dispute. Furthermore, the Supreme Court has never explicitly recognized the appropriateness of Federal habeas in a case such as this.[2] The expansion of

2. I agree with the First Circuit that:

[T]he fact remains that over the many years since enactment of the habeas corpus statute in 1867, the Supreme Court has never acknowledged that habeas corpus is an appropriate remedy for litigating federal constitutional claims arising from state child custody disputes. In two child custody cases decided on federal question grounds (but arguably having jurisdictional connotations) the Court refused to authorize the writ. *Matters v. Ryan*, 249 U.S. 375, 39 S.Ct. 315, 63 L.Ed. 654 (1919); *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). None of the cases implicating custody rights that have come before the Court reached the Court

Federal habeas in this manner is not a course which this Circuit should enter into lightly.

From a strictly legal standpoint, I disagree seriously as to the appropriateness of Federal habeas relief in this case. The "custody" of Carl Davis which purportedly gave rise to Federal habeas in this case was not the type of "custody" which has traditionally formed the basis for habeas relief.[3] Even a cursory review of the Court's opinion reveals that the primary interest being addressed is the interest of Ms. Davis *as the parent* in not being deprived of her child. Only by a strained reading of the opinion can it be said that the true interest with which the Court is concerned is the interest of Carl Davis in not being deprived of his liberty by virtue of some unconstitutional order.

From the standpoint of the administration of justice and the maintenance of our cherished principles of federalism, I am acutely disturbed by the recognition of Federal habeas as an available avenue of relief in child custody disputes. First, I am not convinced that the interests of family and child will be significantly fostered by permitting actions such as these to be litigated in two sets of courts—first state, and then federal, or worse, perhaps simultaneously. Furthermore, I suspect that it will be difficult for our courts to place limits on the types of child custody cases which may be brought in Federal Courts through the habeas route. Although the Court in this case takes pains to emphasize that its holding does not extend to cases in which "two purely private parties litigate the issue of child custody", the net effect of most "purely private" custody disputes is essentially the same as that in the present controversy—a parent is deprived of the continuing custody of his or her child through a state decree. Under the rationale of the Court's decision, what real bar would there be, for example, to an indigent mother asserting a constitutional right to counsel in a "purely private" custody battle, in which she faces the real possibility of being deprived of the custody of her child, and then litigating that question through both the State and Federal Courts? The disclaimers of the majority opinion not withstanding, I fear that this opinion will provide an open invitation for a great, and growing, number of disappointed parents in so-called "private" custody suits to seek habeas relief in Federal Court.

Even more basic, I do not think the problems can go away by characterizing these battles as "private litigation". The State has very much an immediate and direct interest in the welfare of a child and hence his or her custody. So too, does the State have a significant interest in the marriage relationship and the maintenance of the family and the home.

Once this is recognized where does the Court's intrusion end? Consider for example, a husband who has secreted all of his property and files a divorce suit against his wife who desperately wants to preserve both marriage and home and protect it, (and incidentally her errant husband from the wiles of another) but who is left penniless and unable to obtain counsel. Would this Court, again in the high name of the Constitution, decree that the State must provide counsel at its expense? Or suppose that the custody controversy arises directly out of the divorce action as to which the wife, now a forced indigent, is indifferent, but is nevertheless locked in a struggle over parental custody of a minor son. Again

---

through the route of federal habeas. The Supreme Court's sweeping language in cases such as *Hensley v. Municipal Court, supra,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 141 (1973) and *Jones v. Cunningham, supra,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), concerned extensions of the writ to persons criminally accused who had obvious claim to be treated for federal jurisdictional purposes in the same manner as their incarcerated

brethren, even if not confined in the strict sense.
584 F.2d 1103, 1110.

3. For the reasons pointed out in Note 1, supra, I recant the suggestion in may panel concurring/dissenting opinion that since Ms. Davis was seeking the release from custody of her son, Federal habeas was available to her. 618 F.2d at 388.

does the Constitution mandate counsel for her at state expense.

While the question should not have been reached, I also am compelled to disagree with the Constitutional issue as presented to and decided by the Court. In this case, this Court imposes on the state legal system a hard and fast rule. They tell the Florida Circuit Judges that they are not capable of deciding when an indigent parent present at a dependency hearing is in need of counsel, and worse, we declare that the Supreme Court of Florida's rule is unconstitutional for all time and for all circumstances. The state judges have no choice but to appoint counsel in every case.

Although *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1941) was overruled by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), I do not think that the notion of deference to state courts in the interpretation of their own laws, expressed in *Betts*, 316 U.S. at 472, 62 S.Ct. at 1261, 86 L.Ed.2d at 1607, has ever been dismissed as no longer important. In *Gideon*, the Supreme Court decided, not that comity was an insignificant concern for Federal Courts, but that it was outweighed by a more powerful Federal concern in that case, the fundamental right to counsel in a state criminal prosecution,

guaranteed by the Sixth Amendment through the Fourteenth Amendment.

I cannot agree with the Court's conclusion that the Florida Supreme Court's case-by-case approach to the provision of counsel in dependency proceedings, as enunciated in *Potvin v. Keller*, 313 So.2d 703 (Fla.1975), is constitutionally unsound. The rule adopted in *Potvin* was taken directly from the Ninth Circuit opinion in *Cleaver v. Wilcox*, 499 F.2d 940 (1974) and reasonably assures that harsh results will be avoided in dependency proceedings. Furthermore, the Florida Supreme Court has even more recently required the appointment of counsel in *all* cases where indigent parents are threatened with permanent loss of custody or when criminal charges may arise from the proceeding. It is only in cases which contemplate less serious consequences that the case-by-case approach comes into play. In the *Interest of D.B. &. D.S.*, 385 So.2d 83 (Fla.1980).

Every case on which the Court today relies in support of its holding of an absolute right to counsel for parents in a child dependency proceeding, is a criminal case involving the Sixth Amendment, or at least a case involving the potential confinement of the person to whom the absolute right to counsel is granted.[4] I cannot disagree that the right of a parent to retain custody of

---

4. With respect to instances in which habeas has been granted, the First Circuit correctly points out:

> Finally, the writ has been issued in several child custody cases decided by federal courts, albeit in special and largely distinguishable circumstances. *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975); *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *Application of Reed*, 447 F.2d 814 (3d Cir. 1971). *See also Bell v. Leonard*, 102 U.S.App.D.C. 179, 251 F.2d 890 (1958); *Young v. Minton*, 344 F.Supp. 423 (W.D.Ky.1972); *United States ex rel. Schneider v. Sauvage*, 91 F. 490 (W.D.Pa. 1899). *But see United States ex rel. Reed v. Tinder*, No. 75–1454 (D.W.Va.1975) (unpublished opinion).[11]
> [11] The children in *Nguyen Da Yen* were in federal custody since they were under the supervisory control of the Immigration and Naturalization Service, having been brought to this country during the so-called "Viet-namese Babylift." *See* 28 U.S.C. § 2241(c)(1). *Application of Reed, Young*, and *Bell* involved child custody disputes arising in the Virgin Islands and in the District of Columbia, where the federal courts were acting as territorial courts. *Cobell* was based on special grant of jurisdiction over claims relating to federal Indian reservations, 25 U.S.C. § 1303, and concerned an Indian child. In *Schneider*, the court denied the writ. It pursued the habeas question at some length only because the couple on whose behalf the vice-consul of Belgium had brought the petition were citizens of Belgium and the child had been born in Belgium. In *Tinder*, a district court did rely on habeas corpus conditionally to require the State Department of Welfare to return a child to its mother, unless the State granted the mother a hearing before entering its final judgment. The opinion was unreported, however, and did not discuss the jurisdictional issue in detail.
>
> 584 F.2d 1103, 1110.

his children is an important right. But it is not of the constitutional dimension as is an individual's right to his own liberty. It is not an interest which can outweigh the concerns of federalism and of state and federal comity. Therefore, I cannot agree with the holding of the Court—that an indigent parent has an absolute constitutional right to an attorney in a juvenile dependency proceeding to assert and protect that parent's right to continue to raise, care for, nurture and teach a minor child.

I, therefore, respectfully dissent.