**Elsa YOW, et al, Plaintiffs,**

v.

**Lucinda CRATER, et al, Defendants.**

**No. C–80–136–WS.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Nov. 18, 1981.

Paul B. Eaglin of Cooper, Davis & Eaglin, Fayetteville, N. C., for plaintiffs.

Lucinda Crater and Arvil Stanley Crater, Carl F. Parrish of Wright, Parrish & Fraser, Winston-Salem, N. C., for defendant King.

Jonathan V. Maxwell and Bruce E. Colvin, Asst. Forsyth County Attys., Winston-Salem, N. C., for defendants Freeman, Edmisten and State of North Carolina.

Asst. Atty. Gen., Henry T. Rosser and Steven Mansfield Shaber, Associate Atty. Gen. North Carolina Dept. of Justice, Raleigh, N. C., for defendants.

## MAGISTRATE'S FINDINGS AND RECOMMENDATION

HIRAM H. WARD, District Judge.

Plaintiff brings this action on her own and, purportedly, on behalf of her son, as the child's mother and next friend. The child has been declared a dependent child, and has been under the state court's supervision since his placement with foster parents several years ago. Plaintiff seeks relief against four defendant-respondents: Arvil and Lucinda Crater, the court-appointed custodians of the child; George King, the social worker who instituted the dependency petition; Judge William Freeman (then a district court judge), who made some of the rulings in the matter; and the state of North Carolina.

The case comes before this Court on defendants' motions to dismiss. A hearing was held before the undersigned on September 30, 1981. At that time, all parties agreed the case was ripe for summary judgment on all issues. There are no contested issues of fact, and plaintiff stated at the hearing that the sole remaining issue is who is entitled to custody of the child, Zann Yow.

In her first claim for relief, plaintiff seeks the return of her son by requesting the Court to review the state court action pursuant to federal habeas corpus procedure, 28 U.S.C. § 2254. Plaintiff also makes a claim for relief pursuant to 42 U.S.C. § 1983. There, she alleges that her constitutional right to due process was denied

because she did not receive notice of the initial state court hearing which determined that the son was a dependent child, and because she was not served with process. In her third claim for relief, she seeks a declaratory judgment that she was denied due process and equal protection and that she has been damaged by the denial of her constitutional rights. Her fourth claim for relief states that she continues to be denied due process and equal protection of the laws. Her fifth claim for relief alleges that she is without an adequate remedy. Plaintiff seeks declaratory and injunctive relief and attorney's fees but does not assert a damage claim.

The material facts are not contested and appear in plaintiff's brief, which includes by incorporation some of the state court records. Plaintiff's son, Zann Yow, was born on September 14, 1972. At that time plaintiff was married to Robert Yow, III. They were divorced on March 8, 1976, but plaintiff claims to have had custody of the son until June, 1977. At that time, the father took control of the child. A Forsyth County social worker, George King, filed a juvenile petition on February 23, 1978, because the father alleged he was unable to care for the child. At that time the child was already living with the Craters. The petition alleged that plaintiff's whereabouts were unknown.

On March 1, 1978, a state district court judge held a dependency hearing and entered a custody order. The Craters, the father, and the social worker appeared at the hearing. The court found that the child had been living with the Craters since November 28, 1977, at the father's request. During this time, the child's behavior had greatly improved. The Department of Social Services had investigated the Crater's home and recommended that they have custody. The father testified that the mother's current residence was not known. The court found that the son was a dependent child and that placing him in the Crater's custody would be in his best interests. Plaintiff alleges she had no notice of this March proceeding.

On October 3, 1978, plaintiff filed a petition seeking restoration of custody. In the petition, she claimed that she was not given notice of the hearing and that the Craters as well as the child's father knew or should have known that she was temporarily residing in Tucson, Arizona. In an amendment to the petition filed October 18, 1978, she alleged she was entitled to custody because she was not served with process and that her due process rights to a notice of the hearing were violated.

In an order dated October 24, 1978, Judge Freeman found that plaintiff was not served with a summons prior to the first hearing of the matter and that no attempt at service had been made. He therefore concluded that her constitutional right to due process had been violated. He further concluded, however, that, because plaintiff was before the court on a motion for review, the court had jurisdiction as to all parties and that this cured any defect in service. He therefore set the matter for further hearing.

The matter again came before the state court on November 2, 1978. In an order dated November 28, Judge Freeman found that the child had lived the first few years of his life with his mother but had also been cared for by members of the husband's family at different times during these years. The child then appeared to be normal. During this same time, plaintiff became involved in drug usage which led to her arrest and conviction. The father obtained custody of the child in June, 1977. The court further found that plaintiff had lived in Forsyth County seven months prior to the hearing and had seen the child but once in the last year even though she lived only two miles away. The court further found that in the first months of 1978 plaintiff returned to North Carolina and had not seen her other child, a younger daughter, for eight to ten months prior to the hearing. That daughter was left in Arizona.

The court found that plaintiff presently had some employment and lived in a suitable house with another woman whose boyfriend, however, visited the house each eve-

ning. Plaintiff was found to be a fit and proper person to have custody of, and visitation with, the child. However, the court found that the Craters, who had custody of the child since November, 1977, had significantly alleviated the child's social problems, such as a speech impediment and an introverted personality. The court found that the Craters could provide a stable environment which the child needed and that they were fit and proper persons to have custody, care and control of the child.[1] The court decided that it was in the best interest of the child to continue to live with the Craters since they could provide a stable environment. The court noted some doubt as to whether the mother could ensure stability for the child. It found that the child's needs were very serious and that he had shown substantial improvement while living with the Craters. Therefore, the Craters were given actual custody of him, and the mother was given visitation privileges.

Plaintiff appealed this decision but relief was denied. *Matter of Yow*, 40 N.C.App. 688, 253 S.E.2d 647, *cert. denied*, 297 N.C. 610, 257 S.E.2d 223 (1979). The court recognized that N.C.Gen.Stat. § 7A–283 (repealed) then provided that service was not required on both parents but only on one of them or on the guardian or custodian. The court noted that the law provides for a review of a dependent child's status semi-annually for the first year and annually thereafter. The jurisdiction of the court continues during the child's minority unless terminated earlier by court order. N.C. Gen.Stat. §§ 7A–286 (repealed) and 7A–664 (Cum.Supp.1979).

The court of appeals directly addressed plaintiff's due process claim that she was not served with any notice prior to the first hearing and her claim that she was therefore not bound by the initial finding of dependency. It thus proceeded to determine whether Section 7A–283 was unconstitutional as applied to plaintiff. It noted

that at the March, 1978, hearing the court found that the mother's whereabouts were not known. While recognizing that plaintiff had an important due process interest in receiving notice, it also found that the state had an interest in protecting helpless infants. It agreed that plaintiff could not arbitrarily be deprived of custody but emphasized the fact that the evidence before the court in March, 1978, showed that the child was a helpless infant with no one to care for him. The court also pointed out that the decision concerning the custody of the child was not final, but could be reviewed annually. Balancing these facts against the state's interest in caring for helpless children, the court held that plaintiff's rights to due process were not violated. The court then went on to review the November 28, 1978, order which denied her claim for custody. It found plaintiff was entitled to no relief.

On October 25–26, 1979, plaintiff filed another petition before the juvenile court seeking custody of her child. There, the court found that at the time of the November, 1978, hearing plaintiff only had part-time employment earning $60.00 a week in gross wages. It further found that in March, 1979, plaintiff had finally obtained full-time employment, earning substantial wages and was now financially able to provide support for the child. Plaintiff's daughter was now residing with her. Plaintiff's son was enrolled in elementary school and had been attending counseling sessions with the Craters. Once again, the state court found that it would be better for the child to remain in the Crater's custody. Plaintiff was ordered to provide nominal support at a rate of $20.00 per month. She retained visitation privileges, but the court added that the child would not be required to visit plaintiff against his will.

The first issue to be addressed is whether this Court has jurisdiction over plaintiff's habeas corpus claim. This issue has recently been decided by the Fourth Circuit in a

---

[1] It is noted that, while plaintiff was found fit to have custody and visitation, she was not

declared fit to have custody, care, and control.

case remarkably similar to the one now before the Court. *Doe v. Doe*, 660 F.2d 101 (1981), involved a natural mother seeking custody of her child through a habeas corpus petition which alleged that the state's award of custody to another person violated her constitutional rights. In that case, the child's natural parents were divorced. The child's father, John Doe, had custody and, upon remarriage, his second wife, Ann Smith Doe, instituted proceedings to adopt the child. The state permitted adoption over protest by Jane Doe, the child's natural mother, pursuant to a statute allowing adoption without the parent's consent when the court finds "such consent is withheld contrary to the best interest of the child." Va.Code § 63.1–225 (1980).

Jane Doe filed a petition for habeas corpus in Virginia District Court, alleging that the child's "detention" was unlawful. She challenged the state court judgment on constitutional grounds. Ann Smith Doe and John Doe then petitioned the Court of Appeals for a writ of mandamus or prohibition to prevent the district court from exercising jurisdiction over Jane Doe's petition. The Court of Appeals held that "federal habeas corpus is unavailable in suits between private parties where the object of the suit is to ascertain the custody of a child, or the right to rear the child . . . ." At p. 105.

The *Doe* decision has a sound basis in logic and precedent. (*See* p. 105.) Initially, the Court reviewed other circuit court decisions on the availability of habeas corpus relief in child custody disputes. Of the five circuit courts which have considered the

issue, only one has held that it is an appropriate remedy when the sole object of the suit is transfer of custody from one private party to another.[2] The "especially enlightened opinion" in *Lehman v. Lycoming County Children's Services*, 648 F.2d 135 (3d Cir. 1981) (en banc), was found particularly persuasive, because its historical analysis of the habeas writ showed that "the 'custody' of a foster or adoptive parent is simply not the type of custody that may be challenged through federal habeas." *Lehman, supra,* at 142. The Third Circuit further explained that "[c]ustody disputes of the nature addressed here, and which essentially involve no more than the question of who shall raise a child to maturity, do not implicate the federal interest in personal liberty sufficiently to warrant the extension of federal habeas corpus." *Lehman, supra,* at 146.

The *Doe* court also relied on *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978). In that case, the First Circuit held that a natural mother could not use habeas corpus to challenge a state court termination of parental rights, even though it was done without her consent or a finding that she was unfit. There, as here, the state court based its decision on the child's best interests. The First Circuit concluded that this kind of "custody" was not appropriate for habeas relief because it was primarily the rights of the mother that were being asserted, and only incidentally those of the child, the party alleged to be in "custody."

The *Doe* court next reviewed the federal judiciary's long-standing policy of leaving

---

2. *Rowell v. Oesterle*, 626 F.2d 437 (5th Cir. 1980); *Davis v. Page*, 640 F.2d 599 (5th Cir. 1981). Neither opinion contains any discussion of policy or precedent; jurisdiction was granted solely on the grounds that the children involved were held by another person pursuant to a state court custody decision. *Cf. Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978); *Lehman v. Lycoming County Children's Services*, 648 F.2d 135 (3d Cir. 1981); *Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978); *Syrovatka v. Erlich*, 608 F.2d 307 (8th Cir. 1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980); and *Tree Top v. Smith*, 577 F.2d 519 (9th Cir. 1978).

The Ninth Circuit held that habeas jurisdiction was available in a suit involving children held under federal parole status during the Vietnamese Orphan Babylift. *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975). This case is readily distinguishable due to the federal government's direct involvement, a factor which is absent from the instant case. The precedential value of this case to petitioner was significantly weakened by a subsequent Ninth Circuit case in which the court refused to grant a habeas corpus remedy to a mother seeking custody of her child from other private parties who had adopted her through state court proceedings. *Tree Top v. Smith, supra.*

"the whole subject of domestic relations" to the state courts. (At p. 105, citing *Ex Parte Burrus*, 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890)). The Fourth Circuit has consistently acknowledged and upheld the lack of federal court jurisdiction in such areas, particularly questions of child custody. *See, e. g., Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980), and *Wilkins v. Rogers*, 581 F.2d 399 (4th Cir. 1978). The *Doe* court agreed with other circuit courts that "experience and a sense of justice and fairness indicate that the federal courts are not nearly as well equipped as are the local state courts to deal with the problems of child custody." At p. 106.

Finally, the court found that reason as well as precedent supports a federal court's refusal to take habeas corpus jurisdiction in custody disputes between natural and foster parents. In most instances, the child will be best served by stability, but allowing collateral habeas attacks on state court judgments only ensures furtherance of controversy. Indeed, the court noted that parties fighting over the right to rear a child seem to pursue the battle until they have no other forum in which they may litigate. At p. 106.

█ The factual parallels between *Doe* and the instant case dictate that this Court also refuse to assume habeas jurisdiction. In both cases, a habeas corpus petition is used in an effort to restore custody to the child's natural mother. In each instance, a state court's custody award is challenged as unconstitutional. Both state court decisions were based on laws which directed that custody be determined according to the child's best interests,[3] and each time the court found that the child was better served by placing him in the custody of someone other than his natural mother, although in neither instance were the mothers declared unfit. In the instant case, as in *Doe*, the sole purpose of the suit is to regain the right to raise the child.

The factual differences between the cases strengthen rather than weaken the applicability of the principles enunciated in *Doe*.

The major factual difference is that, while *Doe* involved termination of parental rights, the instant case involves only placement of custody with foster parents. Mrs. Yow's parental rights have not been terminated; as noted by the North Carolina court, she retains visitation and partial support rights. *Matter of Yow*, 40 N.C.App. 688, 253 S.E.2d 647, *cert. denied*, 297 N.C. 610, 257 S.E.2d 233 (1979). Additionally, state law guarantees her an opportunity to initiate judicial review of the custody award. N.C.Gen. Stat. § 7A–664 (Cum.Supp. 1979). The "custody" exercised by respondent Craters is far less severe than that which Mrs. Doe challenged. If the Fourth Circuit found that absolute termination of both parental and custodial rights did not "implicate the federal interest in personal liberty sufficiently to warrant extension of habeas corpus", then a transfer of mere custody alone cannot do so.

Petitioner might argue that a second factual difference exists between the instant case and *Doe*, in that she does not petition on her own behalf, but as Zann Yow's next friend. This characterization may be seen as a veiled attempt to escape the impact of *Sylvander* and *Lehman* and cannot withstand close analysis. Mrs. Yow does not claim injury to Zann Yow's constitutional rights, but rather to her own. She challenges the state court custody award on the basis that *she* was not notified and that this omission to serve process violates *her* right to equal protection and due process of law. Were the court to substitute another next friend in Mrs. Yow's place, the habeas petition would fall of its own accord, since the injury which forms the basis of the suit is personal to Mrs. Yow.

For the above stated reasons, this Court is without jurisdiction over petitioner's habeas corpus petition, and the same is recommended to be dismissed.

The second issue before the Court is plaintiff's Section 1983 claim. In this claim, plaintiff asks the Court to declare that N.C. Gen.Stat. § 7A–283 unconstitutionally de-

---

**3.** *Compare* Va.Code § 63.1–225 (1980) *with* N.C.Gen.Stat. § 7A–286 (repealed).

prived her of due process and equal protection. She also asks the Court to enjoin the state court and its officers from continuing supervision over Zann Yow, and to enjoin defendant Craters from retaining custody over him. In essence, plaintiff seeks a judgment from this Court which would negate the North Carolina courts' actions, thereby enabling her to regain custody of the child. For several reasons, this Court should decline to grant the requested relief.

■ Initially, it must be noted that a declaratory judgment is wholly inappropriate on the set of facts now before the Court. It is hornbook law that an action for a declaratory judgment must be based on an actual case or controversy. One aspect of this requirement is that the court must be able to grant "specific relief through a decree of a conclusive character." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). In other words, the case must present some "live" issues which the decree will settle. *See generally* 10 Wright & Miller, *Federal Practice and Procedure* § 2757 (1980). In this action, the challenged statute has been repealed. The present statute governing dependent children requires more extensive service of process, such that the injury of which plaintiff complains would likely not re-occur. N.C.Gen.Stat. § 7A–565 (Cum.Supp.1979). Plaintiff's claim for declaratory relief is therefore moot. *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975).

■■ As for the requested injunctive relief, plaintiff asks this Court to wrest custody away from the state-appointed foster parents and return the child to her. Essentially, what plaintiff asks is that this Court sit in review of the state court, as a court of domestic relations appeals. Plaintiff cites no precedent authorizing this untoward assumption of judicial power, because none

exists. In fact, the carefully enunciated and oft-repeated policy of the federal judiciary is to refuse jurisdiction of family and domestic disputes, since this area of the law belongs to the state courts. *See, e. g., Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 266 (1858); *Ex Parte Burrus,* 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890); *State of Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 384, 50 S.Ct. 154, 155, 74 L.Ed. 489 (1930). *See also Doe v. Doe, supra.* Plaintiff's claim may rest on an alleged violation of federally protected rights, yet the admitted goal of her suit is restoration of custody of her child. The fact that the vehicle for challenging the state custody ruling is a federal constitutional one does not disguise the true nature of her suit as one which seeks relief normally granted in state domestic relations courts.

■ The inappropriateness of a federal court determining family rights is further compounded by the fact that plaintiff has already litigated these issues before the state court. Not only does plaintiff ask the Court to assume a whole new area of jurisdiction, but she asks that in doing so it ignore the decision of the state court to whom these issues were properly first presented. Were the Court able to overcome its reluctance to rule on domestic relations matters, it would still be unable to grant the requested relief, since plaintiff's Section 1983 claim is barred by principles of res judicata and collateral estoppel.[4]

Because plaintiff fully litigated her constitutional challenges before the North Carolina district and appellate courts, she is bound by the state court decisions. In *Sylvander v. New England Home for Little Wanderers, supra,* the court approved the dismissal of plaintiff's Section 1983 allegations because plaintiff had raised her consti-

---

4. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac.,* 94 U.S. 351, 24 L.Ed. 195 (1876). Under collateral estoppel, once a court has decided an issue of fact or law

necessary to its judgment, that decision·may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1970).

tutional contentions before the state court. It noted that, while she may have emphasized different constitutional challenges before the state court, she was foreclosed from proceeding in federal court because "the core of her federal claim was put to the state court." *Sylvander, supra* at 1108 n. 7.

In *Robbins v. District Court of Worth Cty., Iowa*, 592 F.2d 1015 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979), the court found that res judicata barred Section 1983 plaintiffs from challenging in federal court the state court's termination of their parental rights. The court held that res judicata applies to Section 1983 actions and bars relitigation not only of the constitutional issues which were raised but also "constitutional issues that could have been raised in a prior lawsuit if the second suit concerns the same operative nucleus of facts." 492 F.2d at 1017. Thus, the court noted that, although the Iowa Supreme Court did not deal with all of plaintiff's federal issues, the cause of action was essentially the same. It held that the plaintiff could not avoid the bar of res judicata merely by alleging a different theory of recovery where the relevant issue in both suits concerned the alleged unconstitutional termination of parental rights.

The holding in *Robbins* was explained in *Peterson v. Sheran*, 635 F.2d 1335, 1340 n. 7 (8th Cir. 1980), wherein the court held that *Robbins* stood for the proposition that, where a plaintiff voluntarily litigates a Section 1983 claim in state court and the federal court case arises out of the same nucleus

of operative facts, res judicata applies if the federal claim has been fully and fairly litigated in the state courts.

The Fourth Circuit has also held that the bar of res judicata may apply in federal court Section 1983 actions. *Wiggins v. Murphy*, 576 F.2d 572 (4th Cir.), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1978). Furthermore, the applicability of res judicata and/or collateral estoppel to 1983 actions has been recently sanctioned by the Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). There, Justice Stewart clearly stated that there was no constitutional or statutory basis for the idea that a person who asserted a federal right is entitled to at least one opportunity to present the claim to a federal district court.[5] (449 U.S. at 103–105, 101 S.Ct. at 419–420.)

■ At the hearing, plaintiff argued that collateral estoppel and res judicata did not apply to her because she came within the exception set forth in *Allen v. McCurry*. In that case, the Supreme Court stated that a claimant would not be barred from re-litigating issues raised before the state court where he had not been given a full and fair opportunity to litigate. 449 U.S. at 100–101, 101 S.Ct. at 418. This exception, however, applies where the substantive or procedural law used by the state court does not comport with constitutional standards, not where the claimant feels that the state court decision was erroneous. *Id.*

Plaintiff readily admits that she had a full and fair opportunity to litigate the

---

5. The Court in *Allen v. McCurry* expressly refused to decide "whether a Section 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation." 449 U.S. at 94 n.5, 101 S.Ct. at 415 n.5.

However, in this case, the Court need not face the question of whether an issue was reserved from state court litigation. Although plaintiff did not raise the equal protection claim in express language before the state court, she did litigate the factual and legal issues on which that claim is based. Plaintiff's equal protection theory rests on the premise that both parents of a child have an absolute right to be served with notice of a dependency hear-

ing. Failure to serve that notice is the differential treatment of which she complains. However, the North Carolina court held that she did not have an absolute right to service, and that there was no defect in the statutory scheme for service of process. This determination was essential to that court's finding that plaintiff's rights to due process were not violated. Plaintiff is therefore collaterally estopped if not barred from raising these issues again, albeit upon a different theory, before this Court. *Sylvander v. New England Home for Little Wanderers, supra*, at 1108 n.7; *Robbins v. District Court of Worth Cty., Iowa*, 592 F.2d 1015, 1017 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979).

constitutionality of the state's failure to serve her with notice prior to the initial dependency hearing. She recognizes that the court held this omission was not a constitutional violation. However, in the same breath, she argues that the lack of notice was a procedural defect hanging over her during all subsequent proceedings, such that the hearings were rendered nugatory.[6] All plaintiff is doing is attempting to raise again the issue which was decided by the state court. This she may not do. She may disagree with the state court's decision, but she is bound by it because she does not contest that it was rendered under circumstances which do comport with constitutional standards of fairness.

In conclusion, and taking the material facts stated by plaintiff in the light most favorable to her, the Court finds that, as a matter of law, plaintiff is not entitled to the relief she requests. Her claim for declaratory relief has been mooted by the statutory change. Federal courts traditionally abstain from granting injunctive relief in child custody disputes, and plaintiff has shown no peculiar circumstances justifying a departure from that policy. Moreover, this action is barred by collateral estoppel and res judicata. These principles preclude plaintiff from litigating once more before this Court those issues which were decided against her after full and fair litigation in the North Carolina state courts. Therefore, the Court recommends that summary judgment be entered for the defendants.

IT IS THEREFORE RECOMMENDED that the petition for a writ of habeas corpus be denied and that defendants' motions for dismissal and summary judgment be granted and that this action be dismissed.

---

**6.** The Court notes that on brief plaintiff raised another ground for fitting within the exception, but wisely did not press this on oral argument. On brief, plaintiff argued that the state court

refused to recognize the constitutional principle on which her claim was based. In fact, the court recognized it, but simply disagreed with plaintiff on the extent of protection it afforded.