G. WILLIAM ORR, M.D., ET AL., PLAINTIFFS, V. DONALD
L. KNOWLES ET AL., DEFENDANTS.
M. JOHN EPP, M.D., ET AL., PLAINTIFFS, V. CHARLES
THONE ET AL., DEFENDANTS.
337 N.W.2d 699

Filed July 29, 1983. No. 82-752.

Lawrence I. Batt and Thomas P. Kenny of Garber & Batt, for plaintiffs Orr et al.

Michael T. Levy and Michele Wheeler of Levy & Lazer, P.C., for plaintiffs Epp et al.

Paul L. Douglas, Attorney General, and Frank J. Hutfless, for defendants.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

This matter comes before us pursuant to Neb. Rev. Stat. § 24-219 (Cum. Supp. 1982) as 18 certified questions of law from the U.S. District Court for the District of Nebraska. The main thrust of these questions is a request that we interpret Neb. Rev. Stat. § 28-347 (Cum. Supp. 1982) as it stands, and in light of other relevant provisions found under Nebraska law.

Section 28-347 reads: "(1) Except as provided in this section, no physician shall perform an abortion upon a minor without first having given at least twenty-four hours actual notice to one of the parents or the legal guardian, if any, of the minor as to the intention to perform such abortion. If such parent or guardian does not receive actual notice, the notice requirements of this section may be satisfied by sending notice to such parent or legal guardian by certified mail to the last-known address of such parent or guardian as indicated by the minor seeking

the abortion at least forty-eight hours prior to the performance of such abortion, computed from the time of mailing.

"(2) The district court or any judge thereof in the county in which the minor resides or the abortion is to be performed or, in the absence from the county of such district judge the county court or a judge thereof, shall, upon it appearing satisfactorily to the court or judge by the affidavit or testimony of the petitioning minor that the minor is mature enough to make the abortion decision independently or that notification would not be in the minor's best interests, waive the notice requirements of subsection (1) of this section. A petitioning minor may initiate and participate on her own behalf in any proceeding brought pursuant to this subsection and the court may appoint a guardian ad litem for the petitioning minor. The court shall maintain confidentiality as to all proceedings brought pursuant to this subsection. The court shall expedite all proceedings filed by a minor pursuant to this subsection and shall render a decision within twenty-four hours of the initial proceeding on such petition.

"(3) This section shall not apply when an emergency situation exists such that continuation of the pregnancy provides an immediate threat and grave risk to the life or health of the pregnant minor and the attending physician so certifies by affidavit."

This statute has been attacked by the plaintiffs, two physicians and several pregnant minors. In considering its constitutionality, the U.S. District Court certified the following questions to this court for decision:

1. "Will the duties and responsibilities of a guardian ad litem who may be appointed for a minor under the authority of Section 28-347(2) be coextensive with those of an attorney representing a minor in the judicial proceeding authorized by that section; if not, in what respects will the duties and responsibilities differ?"

A review of Nebraska law indicates that there is no clear statement of what the duties or role of a guardian ad litem is. Several Nebraska statutes dealing with minors provide for the appointment of guardians ad litem.

In cases involving termination of parental rights, Neb. Rev. Stat. § 42-364(4) (Reissue 1978) provided in part as follows: "Such guardian ad litem shall forthwith personally investigate the facts and circumstances on all matters pertinent to the best interests and welfare of the children. If it appears to the guardian ad litem that the best interests and welfare of the children may require the termination of the parental rights of one or both parents, he shall apply to the court in writing or orally on the record for such termination." This statute was changed in 1982 and now provides that whenever termination of parental rights is placed in issue, the District Court shall transfer jurisdiction to a juvenile court unless a showing is made that the District Court is a more appropriate jurisdiction. "If no such transfer is made the court shall forthwith appoint an attorney as guardian ad litem to protect the interests of any minor children." § 42-364(4) (Cum. Supp. 1982). We do not believe that this amendment significantly alters the nature of the duties of the guardian ad litem as provided for in the earlier statute.

Neb. Rev. Stat. § 43-104.06 (Reissue 1978) provides for the appointment of a guardian ad litem for children in paternity actions. That statute states: "Only upon the appointment of a guardian ad litem for the child, and a finding that the claimant is a fit person, is able to properly care for the child, and that the child's best interests will be served by granting custody of the claimant, shall custody be granted to the claimant." Again, under this statute it seems the guardian ad litem is to somehow participate in the determination of what is in the best interests of the child.

Generally speaking, a guardian ad litem appears

to be an individual who steps into the position of the minor and, after considering the alternatives, asserts the right of the minor as the guardian ad litem sees fit. Discussing the role of such a guardian, it has been stated:

"However, he is more than a nominal representative appointed to counsel and consult with the trial court, and he has all the duties, powers, and responsibilities of counsel who represents a party to litigation. On the other hand, the functions of a guardian ad litem are merely ministerial and not judicial or quasi-judicial, and his sole function as a representative is to control and manage the action. So, a report submitted by him should only set forth facts, accompanied by any point desired to be urged on behalf of the infant and recommendations to the court, and he should not act in the capacity of commissioner or master to make a report on which the decree is based. The findings contained in his report are not binding upon persons who are not represented by him. In any event, a decree is not rendered void by reason of the fact that it is based on the report of a guardian ad litem.

"It has been stated that the only purpose of a guardian ad litem appointed to represent infants in an action affecting a marriage is to determine which available alternatives are in the best interests of the infant. In a probate proceeding, the concurrent obligation of a guardian ad litem to the court and all the parties imposes a higher degree of objectivity on him than is imposed on an attorney for an adult client. Accordingly, he may not take a stance which, in effect, prevents the court or other parties from having full knowledge of material evidence which he has secured and deems pertinent to the issues affecting his ward. A guardian ad litem or a next friend may not make an election for an infant without the consent of the court; but it may be done with the consent of the court." 43 C.J.S. *Infants* § 234 at 610 (1978).

It seems from these statutes and this general discussion that the role of a guardian ad litem is something akin to the role of an attorney acting as legal counsel, but it is somewhat different. The Code of Professional Responsibility establishes that an attorney must zealously represent the wishes of his or her client. See Canon 7. It is not the role of an attorney acting as counsel to independently determine what is best for his client and then act accordingly. Rather, such an attorney is to allow the client to determine what is in the client's best interests and then act according to the wishes of that client within the limits of the law. EC 7-7.

In response to this first question, based upon the above discussion, we feel the duties and responsibilities of a guardian ad litem, as provided under § 28-347(2), are *not* coextensive with those of an attorney who might represent a minor in proceedings under this section. A guardian ad litem is to determine the best interests of the minor without necessary reference to the wishes of the minor.

2. "Is the filing of the petition for judicial waiver the 'initial proceeding' as that term is used in Section 28-347(2)?"

On the face of this statute it appears that a minor seeking to terminate her pregnancy has two options: first, to notify her parents, or, second, to obtain a court order stating she is mature enough to decide the question of whether her pregnancy will be terminated or not. In pursuing this latter course it seems she must petition the court for such an order. The statute states: "The court shall expedite all proceedings filed by a minor pursuant to this subsection and shall render a decision within twenty-four hours of the *initial proceeding* on such petition." (Emphasis supplied.) § 28-347(2). Giving this section its plain meaning, it would seem that this initial proceeding on the petition would occur sometime after the filing of the petition. To have a proceeding

on the petition, the petition certainly must be already filed.

In addition to the fact that a straight reading of § 28-347(2) supports this view, to require or interpret it otherwise would be impractical. If the filing of the petition was the "initial proceeding" in this matter, a decision of the court would have to be forthcoming within 24 hours of that filing. As a practical matter this would be difficult if not impossible for the courts to comply with. This would mean the filing of the petition, the hearing on the petition, and the decision of court would all have to occur within 1 day. The judicial system as it stands is not equipped to operate in this fashion. This could not be the interpretation intended by the Legislature. As such, we find that the filing of the petition in a proceeding under this statute is not the "initial proceeding" in this matter.

3. "Is the requirement of Section 28-347(2) that the court maintain confidentiality as to all proceedings brought pursuant to that subsection an exception to Section 84-712 and a special exception to Section 24-311?"

Neb. Rev. Stat. § 84-712 (Reissue 1981) provides: "Except as otherwise expressly provided by statute, all citizens of this state, and all other persons interested in the examination of the public records, as defined in section 84-712.01, are hereby fully empowered and authorized to examine the same, and to make memoranda and abstracts therefrom, all free of charge, during the hours the respective offices may be kept open for the ordinary transaction of business."

Neb. Rev. Stat. § 24-311 (Reissue 1979) provides: "All judicial proceedings of all courts established in this state must be open to the attendance of the public unless otherwise specially provided by statute."

While both these statutes state that judicial proceedings and records are matters of public interest,

neither statute is absolute. Both provide that exceptions may be created by express and special provisions.

Section 28-347(2) expressly provides: "The court shall maintain confidentiality as to all proceedings brought pursuant to this subsection." While it is not exactly clear what is meant by confidentiality in this statute, some meaning may be found by a reading of the other relevant abortion statutes.

Neb. Rev. Stat. § 28-333 (Reissue 1979), since declared unconstitutional, provides that no person shall disclose any of the information contained in a consent form required under that statute.

Neb. Rev. Stat. § 28-343 (Reissue 1979) provides that the information contained in the Bureau of Vital Statistics form required under that statute is not to be available to the public. This section states in relevant part: "The abortion reporting form required under this section shall not include the name of the person upon whom the abortion was performed. The abortion reporting form required under this section shall be confidential and shall not be revealed except upon the order of a court of competent jurisdiction in a civil or criminal proceeding."

Finally, Neb. Rev. Stat. § 28-345 (Reissue 1979) provides that reporting forms of the Department of Health shall be confidential. "Under no circumstances shall the compilations of information include the name of any attending physician or identify in any respect facilities where abortions are performed."

While the Legislature might have been more explicit or clear when stating the meaning of confidentiality under § 28-347(2), we feel it is reasonable to infer from a reading of these other statutes that the Legislature intended to keep the proceedings under this section private and not a matter of public record. Therefore, we find that the language of § 28-347(2) does create exceptions to §§ 84-712 and

24-311. The text of and attendance at such proceedings are not open to the general public.

4. "Does Section 25-301 require that the Section 28-347(2) proceeding be brought in the name of the petitioning minor?"

5. "In light of Sections 25-301 and 304, may a minor, as a matter of right, bring an action under Section 28-347(2) in a fictitious or assumed name or must she first obtain court permission to do so?"

We shall handle these two questions together. Neb. Rev. Stat. § 25-301 (Reissue 1979) states: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 25-304."

Neb. Rev. Stat. § 25-304 (Reissue 1979) provides: "An executor, administrator, guardian, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon the same way, and assignees of choses in action assigned for the purpose of collection, may sue on any claim assigned in writing, but such assignee shall be required to furnish security for costs as in case of nonresident plaintiffs."

Section 25-301 establishes an absolute requirement that all actions be brought in the name of the real party in interest. The only allowable exceptions to this rule are set forth in § 25-304. Section 28-347 does not fit within any of these exceptions.

We see nothing in these two statutes which would give a petitioning minor the right or ability to bring an action under § 28-347(2) in a name other than the minor's real name or the name under which she is commonly known. We realize that in certain cases a court may in its discretion allow a party to bring an action in a fictitious name in order to afford that

party an opportunity to pursue a sensitive issue without public scrutiny. The matters addressed by § 28-347(2) may qualify for such treatment.

Before a petitioning minor may pursue an action under § 28-347(2) under a fictitious name, she must receive approval from the relevant court. To hold otherwise not only would be contrary to § 25-301 but would present an unworkable situation. If a minor were allowed to proceed under a fictitious name without first gaining approval of the relevant court, and that minor was declared not mature enough to make the requisite decision without parental consent, she could simply proceed to file in another court under another fictitious name until she received the ruling she desired. There would be no record containing the real name of the minor. Under such a situation there would be no way of obtaining any aspect of finality to the court's decision. Such a situation is contrary to the doctrine of res judicata or issue preclusion, and cannot be allowed.

6. "Is a guardian ad litem appointed under Section 28-347(2) a 'legal guardian' as that term is used in Section 28-347(1)?"

Section 28-347(1) requires 24-hour notice be given "to one of the parents or the legal guardian, if any, of the minor as to the intention to perform such abortion." This legal guardian seems to be an alternative to the parents. That is, if for some reason a minor is not under the care and custody of her parents, that minor will have a guardian to act in the role of the parents. Such a view is in keeping with other Nebraska statutes.

Neb. Rev. Stat. § 30-2608 (Reissue 1979) provides: "The father and mother are the natural guardians of their minor children and are equally entitled to their custody and to direct their education, being themselves competent to transact their own business and not otherwise unsuitable. If either dies or is disqualified for acting, or has abandoned his or her family, the guardianship devolves upon the other.

The court may appoint a guardian for a minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order.''

The powers of such a guardian are the same as a parent. See Neb. Rev. Stat. § 30-2613 (Reissue 1979). The legal guardian then is much the same as a parent.

A guardian ad litem, as set out under question 1, is different than a parent or legal guardian. As pointed out above the guardian ad litem only has the power to act in the single situation for which he or she is appointed.

A general statement on this point is found at 43 C.J.S. *Infants* § 234 at 611 (1978): ''A guardian ad litem or next friend ordinarily does not have the powers of a trustee or guardian, and he does not replace a general guardian for all purposes. He is not entitled to the custody of the person or property of the infant. Furthermore, he is not accountable to the court except for the faithful discharge of his duties. He may be endowed with powers similar to those of the general guardian for the purposes of the litigation at hand.'' In short, the legal guardian is not the same as the guardian ad litem, as provided for in this statute.

7. ''Are all petitioning minors in Section 28-347(2) entitled to free, court-appointed counsel as a matter of right?''

8. ''Are all indigent petitioning minors in Section 28-347(2) entitled to free, court-appointed counsel as a matter of right?''

These two questions will be considered together. First of all, it should be pointed out that the statute does not provide for the appointment of legal counsel for any minor. This statute only provides for the appointment of a guardian ad litem.

No case has been found which deals directly with the question of the right to appointed counsel in proceedings such as these. The closest analogous situation found is that of termination of parental rights.

In such cases the right to appointed counsel for indigent criminal defendants established in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), and *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), has been expanded to the area of civil litigation.

In *State v. Caha*, 190 Neb. 347, 208 N.W.2d 259 (1973), this court discussed the right to counsel for indigent parents in a termination of parental rights case. Relying heavily on a New York Court of Appeals decision, we said: "In a very similar case the New York Court of Appeals held that an indigent parent was entitled to the assistance of counsel at the expense of the State. . . . The New York court said: 'In our view, an indigent parent, faced with the loss of a child's society, as well as the possibility of criminal charges (Family Ct. Act, §§ 1014, 1052, 1055; Penal Law, Consol. Laws, c. 40, § 260.10), is entitled to the assistance of counsel. A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right . . . to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer. To deny legal assistance under such circumstances would — as the courts of other jurisdictions have already held . . . constitute a violation of his due process rights and, in light of the express statutory provision for legal representation for those who can afford it, a denial of equal protection of the laws as well. As the Federal District Court wrote in the very similar Cleaver case . . . "whether the proceeding be labelled 'civil' or 'criminal,' it is fundamentally unfair, and a denial of due process of law for the state to seek removal of the child from an indigent parent without according that parent the right to the assistance of court-appointed and compensated counsel. * * * Since the state is the adversary * * * there is a gross inherent imbalance of experience and expertise between the parties if the

parents are not represented by counsel. The parent's interest in the liberty of the child, in his care and in his control, has long been recognized as a fundamental interest. * * * Such an interest may not be curtailed by the state without a meaningful opportunity to be heard, which in these circumstances includes the assistance of counsel." ' " *Id.* at 349-51, 208 N.W.2d at 260-61.

The same result has been reached by several of the federal courts. See, *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *Davis v. Page*, 640 F.2d 599 (5th Cir. 1981). The courts in these cases rely on the fact that a substantial right is involved and the fact that the indigent individual involved faces the state as an adversary which will surely be represented by legal counsel. Under the idea of fundamental fairness such individuals must themselves be represented by counsel before being deprived of their rights.

In proceedings under § 28-347(2) there is no doubt that a minor's fundamental right to privacy is involved. *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). The major and controlling difference between the termination of parental rights cases and proceedings under § 28-347(2) is that the latter proceedings are not adversarial in nature. This statute does not provide that the state or anyone else will contest the minor's claim that she is mature enough to make the abortion decision herself. Rather, she will present evidence, and the judge will then make the decision as to her maturity. Since there is no adversarial aspect to these proceedings, we find that no petitioning minor, indigent or otherwise, is entitled to free court-appointed counsel as a matter of right in proceedings under § 28-347(2).

9. "If the court finds under Section 28-347(2) that the minor is mature enough to make the abortion decision independently, may it refuse to waive pa-

rental notification based on a finding that a parent's, or its own, contrary decision is a better one?"

Section 28-347(2) states in relevant part: "The district court or any judge thereof in the county in which the minor resides or the abortion is to be performed . . . *shall*, upon it appearing satisfactorily to the court or judge by the affidavit or testimony of the petitioning minor that the minor is mature enough to make the abortion decision independently or that notification would not be in the minor's best interests, waive the notice requirements of subsection (1) of this section." (Emphasis supplied.)

Basically, what this statute provides is that if the court finds, based upon the evidence adduced, that a minor is mature enough to make this decision, or that notice to that minor's parents is not in that minor's best interest, then that court shall waive the notice requirements of § 28-347(1).

As we have said in the past, "As a general rule, in the construction of statutes, the word 'shall' is considered mandatory and inconsistent with the idea of discretion." *Moyer v. Douglas & Lomason Co.*, 212 Neb. 680, 685, 325 N.W.2d 648, 651 (1982). The effect of using "shall" in this statute is that once a judge finds the minor is mature enough, or notice to her parents would not be in her best interests, that judge must waive the notice requirements of subsection (1). Therefore, once a court makes such a finding, it may not refuse to waive the notice requirements.

10. "Would a physician violate Section 28-347(1) if he or she performed an abortion upon a minor whom the physician reasonably and in good faith, though erroneously, believed to be nineteen or more years of age or had been married?"

This section, on its face, does not discuss whether a physician's good faith belief as to a person's age is a defense. Ideally, if the Legislature had intended such good faith to be a defense, it would have expressly so provided in the statute.

Some guidance on this question may be found

when viewing other Nebraska statutes. Neb. Rev. Stat. § 28-805 (Reissue 1979) creates the offense of debauching a minor. That statute nowhere sets forth any good faith defense as to the age of the minor. Under that statute it is not a defense if a person in good faith believes that the minor involved is of the age of majority.

In contrast, under the Nebraska Liquor Control Act there is a prohibition against selling liquor to minors. Neb. Rev. Stat. § 53-180 (Cum. Supp. 1982). In Neb. Rev. Stat. § 53-180.07 (Reissue 1978) the Legislature specifically provided a defense for the seller of alcoholic beverages to minors, who in good faith relied on written proof falsely showing the minor to be of majority age.

The import of these two statutes in the instant case is that, under the statute prohibiting the debauching of minors, no good faith defense for the violator is provided under the statute, and, in fact, the good faith belief of the violator as to the age of the minor is not a defense. Under the Nebraska Liquor Control Act the Legislature chose to allow such a defense, and specifically provided one. On this basis, we feel that if the Legislature had intended the good faith belief of the physician as to the age of the minor to be a defense under § 28-347(1), it would have so provided, as was done under the Nebraska Liquor Control Act. Therefore, we find that a physician's good faith belief as to the minor's age is not a defense under § 28-347(1).

11. "For the purposes of Section 28-347, is a woman's minority to be determined by the law of the state of her residence, if it is other than Nebraska?"

We feel the minority status of women seeking to obtain abortions in Nebraska should be controlled by Nebraska law. An analogous situation may be once again found under the Nebraska Liquor Control Act. Under that act a minor is defined as any male or female under the age of 20 years. Neb. Rev. Stat. § 53-103(23) (Cum. Supp. 1982). If an individual from

outside Nebraska, who is less than 20 years of age, enters Nebraska and attempts to purchase alcoholic beverages, he or she may not lawfully do so. This is true even if this person under the age of 20 has reached majority in his or her home state and is therefore able to lawfully purchase alcoholic beverages in that state.

Since these abortions are to be performed in Nebraska, under the laws and jurisdiction of this state, we feel Nebraska law is controlling as to the age of majority for purposes of this statute.

12. "Is the court to disregard in interpreting Section 28-347(2) all parental objections of which it may become aware during the hearing that are not based exclusively on what would serve the minor's best interests?"

In answering this question, we simply say yes. This statute, on its face, sets forth what a court is to consider under subsection (2). The court is to consider evidence of maturity and the best interests of the minor; nothing else. Such parental objections as set out in this question are not proper for consideration by the court in reaching its decision.

13. "Does the Nebraska law permit a minor to obtain a court order under Section 28-347(2) without parental notification?"

Yes; this statute on its face does provide for such a procedure.

Questions 14 through 18 relate to the matter of appeals taken from decisions rendered under § 28-347(2), whether such appeals will be expedited, and whether this court will provide special rules for such appeals. These questions will be discussed together.

First of all, the only direction found in the statute itself is in its provision that "The court shall expedite all proceedings . . . and shall render a decision within twenty-four hours of the initial proceeding on such petition." § 28-347(2). We believe that "the court" refers to the trial court and not to the court on appeal.

Secondly, the timetable for appeals is prescribed by statute. "Any party may appeal from the . . . final order of the county . . . court to the district court of the county where the county . . . court is located." Neb. Rev. Stat. § 24-541.01(1) (Cum. Supp. 1982).

"(1) In order to perfect an appeal from the county . . . court the appealing party shall within thirty days after the rendition of the judgment . . .

"(a) File . . . a notice of appeal; and

"(b) Deposit . . . a docket fee . . . .

"(2) Satisfaction of the requirements . . . of this section shall perfect the appeal and give the district court jurisdiction of the matter appealed . . . ." Neb. Rev. Stat. § 24-541.02 (Cum. Supp. 1982).

"Upon perfection of the appeal the clerk of the county . . . court shall transmit within ten days to the clerk of the district court a certified copy of the transcript and the docket fee, whereupon the clerk of the district court shall docket the appeal." Neb. Rev. Stat. § 24-541.04(1) (Cum. Supp. 1982).

"A . . . final order made by the district court may be reversed . . . by the Supreme Court . . . ." Neb. Rev. Stat. § 25-1911 (Reissue 1979).

"The proceedings to obtain a reversal . . . shall be by filing in the office of the clerk of the district court . . . within one month after . . . the making of such final order . . . a notice of intention to prosecute such appeal . . . and . . . by depositing . . . the docket fee required by law . . . ." Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1982).

It is true that it is within this court's discretion, under its rule-making authority, to decide what class of cases shall be advanced or expedited once they are placed on the docket. However, we are not prepared to state, and we do not state, that we will alter the procedural steps to perfect an appeal, which we have previously said are jurisdictional. *Nebraska State Bank v. Dudley*, 203 Neb. 226, 278 N.W.2d 334 (1979).

Our answer to question 17, whether a decision of the county court is appealable to the District Court or to this court, would seem to be unimportant at this juncture. Outside of cases involving the authority of a county judge to issue a temporary injunction in the absence of the district judge, the only case remotely on point is *Kingman v. Davis*, 63 Neb. 578, 88 N.W. 777 (1902). In that case this court, through Commissioner Pound, stated in effect that the Supreme Court can not review the rulings of the county court directly, but can only review the judgment of the District Court rendered on appeals therefrom. We believe that reasoning to be applicable here.

Judgment is entered accordingly.

JUDGMENT ENTERED.