REQUESTED BY: Mark B. Horton, M.D., M.S.P.H., Director of Health Nebraska Department of Health
QUESTIONS:
You have asked the following questions concerning the abortion reporting forms required by Neb. Rev. Stat. § 28-343
(1995):
 1. May the Department of Health use information on the abortion report form required by Neb. Rev. Stat. § 28-343 internally for other than statistical analysis; such as for enforcement of licensing laws unrelated to the information required in §§ 28-343 and 28-345? If so, are there any limits to access and use by agency personnel?
 2. May the Department of Health release the information on the abortion report form to another state agency or to anyone else without a court order?
 3. If a court order is required before the information can be released to another state agency or to anyone else, under what circumstances could the court order be obtained?
CONCLUSIONS:
 1. Yes, the Department of Health may use the information internally for enforcement of licensing laws. Limits on access and use by agency personnel would be matters of policy as established by the Department of Health.
 2. Yes, the Department of Health may allow access to another state agency without a court order provided the other agency's purpose in requesting the information is related to some governmental duty of the agency. The Department of Health, in order to comply with nonpublic confidentiality restrictions, may wish to consider adopting policies or regulations in this regard. The Department of Health may also wish to consider requiring interagency confidentiality agreements as a condition to providing information in the event the Department elects to provide the information to another agency.
 3. No opinion is required on this question in view of the answer to question #2. However, it is observed that a court order would be needed before providing the information to any member of the public. Any court order granting a member of the public access to confidential information necessarily depends upon the facts of each case. Thus, a case by case approach would need to be taken because of the multitude of possible fact situations.
Statutes Analyzed:
Neb. Rev. Stat. § 28-343 (1995) provides:
 The Department of Health shall prescribe an abortion reporting form which shall be used for the reporting of every abortion performed in this state. Such form shall include the following items:
(1) The age of the pregnant woman;
 (2) The location of the facility where the abortion was performed;
(3) The type of procedure performed;
(4) Complications, if any;
(5) The name of the attending physician;
 (6) The pregnant woman's obstetrical history regarding previous pregnancies, abortions, and live births;
 (7) The stated reason or reasons for which the abortion was requested;
 (8) The state of the pregnant woman's legal residence;
 (9) The length and weight of the aborted child, when measurable;
 (10) Whether an emergency situation cause the physician to waive any of the requirements of section 28-327; and
 (11) Such other information as may be prescribed in accordance with section 71-602.
 The completed form shall be signed by the attending physician and sent to the Bureau of Vital Statistics within fifteen days after each reporting month. The completed form shall be an original, typed or written legibly in durable ink, and shall not be deemed complete unless the omission of any item of information required shall have been disclosed or satisfactorily accounted for. Carbon copies shall not be acceptable. The abortion reporting form shall not include the name of the person upon whom the abortion was performed. The abortion reporting form shall be confidential and shall not be revealed except upon the order of a court of competent jurisdiction in a civil or criminal proceeding. (emphasis added)
 Neb. Rev. Stat. § 28-345 (1995) states:
 The Department of Health shall prepare and keep on permanent file compilations of the information submitted on the abortion reporting forms pursuant to such rules and regulations as established by the Department of Health, which compilations shall be a matter of public record. Under no circumstances shall the compilations of information include the name of any attending physician or identify in any respect facilities where abortions are performed. The Department of Health, in order to maintain and keep such compilations current, shall file with such reports any new or amended information.
Neb. Rev. Stat. § 28-344 provides for a Class II misdemeanor for a violation of Neb. Rev. Stat. § 28-343.
The answer to your questions hinges on the proper interpretation of the confidentiality language of Section 28-343
which states, "The abortion reporting form shall be confidential and shall not be revealed except upon the order of a court of competent jurisdiction in a civil or criminal proceeding."
Legislative History:
Neb. Rev. Stat. §§ 28-343 and 28-345 were originally enacted in 1973 as part of broader legislation to regulate abortion after the United States Supreme Court's Roe v.Wade decision earlier that year. When Nebraska enacted the Nebraska Criminal Code in 1977, which was a major revision of prior criminal statutes, the 1973 version of §§ 28-343 and28-345 were included as part of the then-new Nebraska Criminal Code. 1977 Neb. Laws, LB 38, §§ 58 and 60. At that time, the statutes contained no confidentiality provisions restricting disclosure of the abortion reporting forms.
Significant later statutory amendments to Section 28-343 were the following:
 1. In 1979, LB 316 added the current statutory language for confidentiality of the completed abortion reporting form and restricting the revealing of it, except upon a court order;
 2. In 1979, LB 316 also added the current provision specifically providing that the name of the person upon whom the abortion was performed shall not be included;
 3. The original statutory provision requiring reports of abortions "prescribed" was deleted in 1984;
 4. The current language of Subsection 11 for reporting "such other information as prescribed in accordance with section 71-602" (which requires the Department of Health to adopt regulations for standard forms for vital events) was added in 1989;
 5. Original language for the "Bureau of Vital Statistics" to establish the reporting form was deleted in 1989 with the "Department of Health" designated as the prescriber of the reporting form.
At the same time Section 28-343 was amended by LB 316 in 1979, amendments were made to Section 28-345 to add the current language prohibiting the inclusion of the name of any attending physician or facilities where abortions are performed from the Department of Health's public record compilations of information obtained from the abortion report forms.
The 1979 confidentiality amendments were part of LB 316's broader amendment of Nebraska's abortion statutes. The legislative history of LB 316 clearly demonstrates it was enacted in response to a pending federal court lawsuit challenging the constitutionality of Nebraska's abortion statutes.
On December 28, 1978, the Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, had entered a preliminary injunction restraining the application of ten sections of Nebraska's abortion statutes in WomensServices, P.C. v. Exon. Judge Urbom's bench remarks, when he issued the preliminary injunction, also addressed the constitutionality of the then-existing provisions of § 28-343
abortion reporting requirements as follows:
 Section 28-343 relates to records which must be kept. . . . I think there are problems with it. There is no provision for confidentiality; and in the Planned Parenthood case, the Court specifically said that the fact that the statute provided for confidentiality and for keeping the records only seven years, were factors that assisted in persuading the Court that the provision was constitutional. The Nebraska statute has no such provision. Now I am aware that the statute does not require the listing of the names of the women who have had abortions, but it requires the listing of many other things which may, at least in many counties in Nebraska, identify the person very nicely; and does not prohibit the Bureau of Vital Statistics from requiring the revealing of names, so far as I can see. It says that the Bureau of Vital Statistics shall establish a form; such form shall include the following items to such other information as may be necessary to complete the forms. That does not mean, I acknowledge, that the names will be there. I am saying it does not prohibit; and in no sense does it provide that those records will not be public records; therefore, I have serious questions about the constitutionality of that. (emphasis added)
The above comments of Judge Urbom appear in the 1979 Nebraska Legislative Journal. The Judge's comments were continually referred to by senators during the floor debate of LB 316 in the context of an effort to pass abortion legislation that would survive the pending constitutional challenge.
The Introducer's Statement of Intent for 1979 Neb. Laws LB 316 also reflects that the bill was for the purpose of clarifying Nebraska's abortion statutes which were under the federal district court order enjoining their enforcement. The Statement of Intent goes on to state that LB 316 "proposes to rely whenever possible upon clearly definitive U.S. Supreme Court
rulings in making necessary clarifications." (emphasis added).
The floor debate on LB 316 is extensive. The debate on the confidentiality provisions of the abortion reporting statute are a small portion of the debate. In view of cautions made by Justices of the Nebraska Supreme Court in Omaha Pub. PowerDist. v. Nebraska Dept. of Revenue, 248 Neb. 518, 530
(1995), against placing any particular reliance upon the comments of any particular senator when reviewing legislative history for purposes of determining legislative intent, we resist the temptation to highlight selected quotes from selected senators. However, suffice it to say that the legislative floor debate reflects a consistent discussion of the confidentiality provisions in the context of: (1) what was necessary for the abortion reporting form requirements to pass constitutional muster, (2) the confidentiality provisions were to protect against public disclosure of the reporting forms, and (3) confidentiality to protect the perceived constitutional privacy interests of women who had abortions.
As an aside, LB 316's abortion reporting form and confidentiality provisions were later reviewed by Judge Urbom after their enactment. In Women's Service, P.C. v.Thone, 483 F. Supp. 1022 (D.Neb. 1979), Judge Urbom found the abortion reporting requirements of § 28-343 to be constitutional except for a provision requiring the reporting of "prescribed" abortions. Judge Urbom enjoined enforcement of the latter provision, which was later also deleted from the statute by legislative amendment in 1984 as mentioned above. Judge Urbom's decision stated, "The information requested is not vague, excessive, or abusive. The state has the power to gather such information. See, Planned Parenthood of Missouri v.Danforth." 483 F. Supp. at 1045.
Judge Urbom's reliance upon the United States' Supreme Court decision in Planned Parenthood of Missouri v.Danforth, 428 U.S. 52, 96 S.Ct. 2831 (1976), was understandable since it would have been the leading case on the constitutionality of abortion reporting requirements at that time. In Danforth, the Supreme Court stated:
 Recordkeeping and reporting requirements that are reasonably directed to the preservation of maternal health and that properly respect a patient's confidentiality and privacy are permissible.
428 U.S. at 80, 96 S.Ct. at 2846. The Danforth Court stated that Missouri's abortion reporting requirements presented "no legally significant impact or consequence on the abortion decision or on the physician-patient relationship."428 U.S. at 81; 96 S.Ct. at 2846.
Subsequent to the Danforth decision, the United States Supreme Court further clarified the constitutional limits on abortion reporting requirements in Planned Parenthood ofSoutheastern Pennsylvania v. Casey, 505 U.S. 833,112 S.Ct. 2791 (1992). In Casey, eight justices upheld the constitutionality of Pennsylvania's abortion record keeping and reporting requirements. Under Pennsylvania law, the identity of each woman having an abortion remained confidential. However, the justices had different rationales for their conclusion. Three of the justices joined in Justice O'Connor's opinion. Three other justices joined in Chief Justice Rehnquist's opinion.
Justice O'Connor's opinion in Casey announced an overall "undue burden" standard by which the constitutionality of state abortion statutes would be analyzed:
 . . . a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends.
112 S.Ct. at 2820. Justice O'Connor's opinion first noted that the Pennsylvania abortion reporting statutes were constitutional under the Danforth standard. However, Justice O'Connor's opinion then continued and applied the "undue burden" standard. The opinion observed that Pennsylvania's abortion reporting requirements did not "impose a substantial obstacle to a woman's choice" with the exception of a reporting requirement of a married woman's reason for failure to provide notice to her husband, which was held to place an "undue burden" on a woman's choice.
The separate opinion by Chief Justice Rehnquist inCasey upheld the constitutionality of the Pennsylvania abortion reporting requirements on the basis that the requirements:
 . . . rationally further the State's legitimate interests in advancing the state of medical knowledge concerning maternal health and prenatal life, in gathering statistical information with respect to patients, and in ensuring compliance with other provisions of the Act.
112 S.Ct. at 2833 (emphasis added).
Under the standard applied by the four justices in the opinion of Chief Justice Rehnquist, the reporting forms could constitutionally be used to ensure compliance with state abortion laws. Under the standard applied by the four justices in the opinion of Justice O'Connor, the information provided on the abortion reporting forms could be used internally, without public disclosure, to assist in compliance with state abortion laws. Such a use would not be an "undue burden" on the woman's abortion decision and should help promote the public health by allowing the Department access to information of assistance in regulating professionals and facilities.
Since the abortion reporting requirements of Neb. Rev. Stat. § 28-343 prohibit reporting the name of the woman who had the abortion, require that the form itself be confidential, and require a court order before the form could be "revealed", the statute would be constitutional for purposes of non-public, governmental access to ensure compliance with Nebraska's abortion laws and Nebraska's licensure laws related to abortion. Thus, the 1979 legislative purpose of having constitutional abortion reporting requirements has clearly been achieved.
The next question concerns the interpretation of §§ 28-343
and 28-345 to determine who can have access to the abortion reporting forms in compliance with the statutory confidentiality requirements.
Access by Department of Health personnel:
There are numerous examples of legislation specifying who may have access to confidential information in the possession of the government. Neb. Rev. Stat. § 28-343 is not one of them.
For example, Neb. Rev. Stat. § 83-1068 (1994) specifies who may have access to confidential mental health commitment records (subject of commitment, subject's attorney, parent/guardian, mental health board, etc.). Section 83-109
specifies who is allowed access to records of patients in institutions operated by the Department of Public Institutions (Governor, the Department, legislative committees, certain federal agencies, etc.). Section 60-4,118.03 (Cum.Supp. 1994) specifies who is allowed access to confidential physical or mental examination reports of applicants for motor vehicle licenses (Health Advisory Board, Director of the Department of Motor Vehicles, designees of the Director). Section 32-331
(Supp. 1995) provides that certain confidential voter records "shall be kept in a separate file from the other registered voter information". Federal tax statutes also contain provisions outlining who has access to tax returns and for what purposes.26 U.S.C. § 6103. There are other statutory examples too numerous to cite which specify who may have access to confidential information in the possession of the government.
In Orr v. Knowles, 215 Neb. 49, 337 N.W.2d 699
(1983), the Nebraska Supreme Court referred to the confidentiality provisions of the abortion reporting form statute in the context of its decision on another abortion statute providing for confidentiality of court proceedings for minors seeking abortions. Referring to the confidentiality statute for court proceedings involving minors, the Court stated:
 While the Legislature might have been more explicit or clear when stating the meaning of confidentiality under § 28-347(2), we feel it is reasonable to infer from a reading of these other statutes that the Legislature intended to keep the proceedings under this section private and not a matter of public record."
Id. at 55.
The language and legislative history of the abortion reporting form also makes clear there was a legislative intention of keeping the completed abortion report forms "not a matter of public record". However, one cannot go so far as to conclude that the forms would be statutorily restricted from access by Department of Health personnel themselves.
Nebraska's abortion reporting form statute § 28-343
contains no specific directives as to who at the Department of Health can and can't have access to the completed reporting forms once they have been sent to the Bureau of Vital Statistics. It is noteworthy that the Bureau of Vital Statistics is not a state agency. It would be more accurate to describe the Bureau of Vital Statistics as a state function which is carried out by the Department of Health. The Department of Health is the state agency which is responsible for the state's vital statistics bureau, not the other way around. Neb. Rev. Stat. § 71-601
(Cum. Supp. 1994). While it only makes sense that § 28-343
directs those required to complete the abortion report form to send the form to the attention of the Department's vital statistics bureau, the statute does not restrict the staff in the area opening the envelope as the only ones in government who can have access to the completed report forms.
The origination of a Vital Statistics Bureau in Nebraska originated in 1905 with the passage of an act in which the State Board of Health was designated as the state registrar of vital statistics with various duties and obligations for compiling vital statistics. 1905 Neb. Laws, H.R. 77, Chapter 98, § 1. Subsequent legislative history reflects that vital statistics functions have been under various state agencies, including the former Department of Public Welfare, the Department of Health, and as of January 1, 1997, under the new Department of Health and Human Services Finance and Support. Rev. Stat. § 8159 (1922); Neb. Laws 1933, Ch. 149; 1996 Neb. Laws LB 1044, § 513. See, 1955-56 Rep. Att'y Gen., Op. dated May 1, 1956 "Governor Authority with Respect to Department of Health". As of January 1, 1997, the Department of Health and Human Services Finance and Support will be responsible for prescribing the abortion reporting form and the public compilations of information from the forms. 1996 Neb. Laws LB 1044, §§ 63, 64, and 980.
Thus, the Bureau of Vital Statistics is currently a state function of the Department of Health. Its function is staffed, supervised, and performed within the Department of Health. The Department, under the direction of the Director of Health, has authority to determine who internally can have access to the abortion reporting form information as well as the Department's internal use of the information in carrying out the Department's governmental duties and obligations as a whole. A state agency is given broad discretion to determine the method and manner of enforcing laws it is charged with administering. SecurityInv. Co. v. State, 231 Neb. 536 437 N.W.2d 439 (1989);Bartlett v. State Real Estate Commission, 188 Neb. 828,199 N.W.2d 709 (1972). Supervision of matters within the governmental duties of an agency is generally accomplished by entrusting such matters to the discretion of the agency.Security Inv. Co. v. State, Id.
Obviously, § 28-345 imposes a duty on the Department of Health to keep permanent file compilations of the information obtained from the abortion reporting forms, which compilations shall be a matter of public record. The Department of Health would necessarily assign staff who would have to look at the forms to compile the required compilations.
The Department of Health has general supervision and control over matters relating to public health with its general powers as set forth at §§ 81-601 to 81-604.03. Scattered throughout the statutes are numerous other statutory obligations and duties. Among these are the licensing of health care professionals and institutions, performing inspections of licensed health care institutions, and conducting investigations of licensed professionals to enforce the Uniform Licensing Law. Among the type of health care facilities requiring a license is a health clinic, which is defined as including the office or clinic of an association of physicians performing ten or more abortions during a calendar week Neb. Rev. Stat. § 71-2017.01(9) (Cum.Supp. 1994). Upon obtaining a license, the health clinic would then be regulated by the Department for the protection of the public.
A determination that a physician or an association of physicians had been performing ten or more abortions per week could theoretically be made from a review of the abortion reporting forms. The completed forms could allow the Department of Health to determine the identity of unlicensed health clinics. Steps could then be taken, without publicly disclosing the reporting forms themselves, to enforce the licensure requirements for the protection of the public health. This is simply one example of information on the abortion reporting forms which could be used by the Department of Health internally in furtherance of the Department's licensure duties for protection of the public.
Internal access by Department staff to the abortion reporting forms for the purpose of the Department fulfilling its statutory duties in protecting the public health would not jeopardize the constitutionality of the abortion reporting form statute under the constitutional standards stated in the opinions by Chief Justice Rehnquist and Justice O'Connor in PlannedParenthood of Southeastern Pennsylvania v. Casey, supra. Under the standard as applied by the Chief Justice's opinion, using the abortion reporting information for purposes of ensuring compliance with abortion laws is acceptable. Under the standards of Justice O'Connor's opinion, such internal access would not be an undue burden on a woman's abortion decision since internal review of the forms necessarily means the information still remains nonpublic within the Department.
The legislative history of the confidentiality provision of the abortion reporting statutes reflects legislative purposes of having a constitutional statute, protecting the confidentiality of women who have abortions, restricting public access to the forms, and, as noted in the Introducer's Statement of Purpose for LB 316 prior to its enactment in 1979, relying whenever possible upon "U.S. Supreme Court rulings in making necessary clarifications". Thus, a reasonable construction of the confidentiality provisions of Neb. Rev. Stat. § 28-343, in carrying out the Legislature's intent, does not require the Department of Health to deny access to the abortion reporting forms to Department staff for use internally in enforcement of licensing laws. Limits on access and use by agency personnel would be matters of policy as established by the Department of Health.
Access by another state agency:
Presumably, there would be occasions when other state agencies have a need for access to abortion reporting forms in carrying out their duties. An obvious example would be a Nebraska State Patrol investigation of a violation of the abortion reporting statute itself, since such a violation is a Class II misdemeanor. Neb. Rev. Stat. § 28-344 (1995). The ability of a state law enforcement agency to investigate a violation would obviously be difficult if the agency was not allowed access to the very document it was supposed to be investigating.
The question of access by other state agencies necessarily involves the issue of proper interpretation of the confidentiality language of Section 28-343. As noted above, the legislative history of the confidentiality provision of the statute reflects legislative purposes of having a constitutional statute, protecting the confidentiality of women having abortions, restricting public access to the forms, and, as noted in the Introducer's Statement of Purpose for LB 316 prior to enactment in 1979, relying whenever possible upon "U.S. Supreme Court rulings in making necessary clarifications". All of these legislative purposes can be served and other state agencies can also carry out their governmental duties if access to the reporting forms is permitted only on the basis that the other agency must treat the information as non-public confidential information that cannot be revealed without a court order.
While it is clearly a matter of policy for the Department of Health to decide whether it wishes to allow access to another agency absent a court order, it is a reasonable construction of the Legislative intent for the abortion reporting statutes that other state agencies may be allowed access to the abortion reporting forms without a court order provided the reports remain nonpublic. The Department may want to consider requiring other agencies, as a precondition to being granted access, to execute confidentiality agreements detailing the other agency's governmental duty or purpose which gave rise to the need for the information along with the other agency's acknowledgement to take appropriate measures to protect the confidentiality of the information. The Department of Health may also want to consider adopting its own internal policies and procedures that would require the agency to satisfy itself first that the other agency making the request has a legitimate governmental duty or purpose in requesting access.
 DON STENBERG Attorney General
 James D. Smith Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General