REQUESTED BY: Michael J. Linder, Director, Nebraska Department of Environmental Quality (NDEQ)
QUESTIONS: 1. Does Neb. Rev. Stat. § 25-21,261(1) restrict the agency's ability to obtain injunctive relief?
 2. Does the environmental audit law exempt an audit from disclosure in the face of a request to the agency made under the Public Records Act?
CONCLUSIONS: 1. No, but other sections of the environmental audit law may limit the evidence which can be used in the quest for such relief.
2. No.
LB 395 was enacted in 1998 to remove the specter that a voluntary environmental self-audit would be used against the business or entity which arranged for it, provided that steps were taken within a reasonable time to rectify problems highlighted by the audit. It was believed that voluntary environmental compliance would be improved if such audits were used, but that the fear that their own audits would be used against them had discouraged persons from conducting them. See Neb. Rev. Stat. § 25-21,254 (Cum. Supp. 2000). The legislation provided that a qualifying environmental audit would not be admissible as evidence in any civil or administrative proceeding or enforcement proceedings under local ordinances. Neb. Rev. Stat. § 25-21,256 (Cum. Supp. 2000). There are exceptions, but a discussion of them seems unnecessary for present purposes. The legislation also encourages the prompt reporting and correction of violations which come to light through such audits. The encouragement comes in the form of immunity from civil penalties. Neb. Rev. Stat. §§ 25-21,260 and 25-21,261 (Cum. Supp. 2000).
 I.
Your first question is whether Neb. Rev. Stat. § 25-21,261(1) (Cum. Supp. 2000), restricts NDEQ's ability to obtain immediate and complete injunctive relief. You give the example of a facility which discloses that it has been operating without a permit, where such permit was required prior to commencing operations. You wonder whether, assuming the facility submitted a complete permit application within a reasonable time, the section would prevent NDEQ from obtaining an injunction to prohibit further operations until a permit was obtained. You point to Neb. Rev. Stat. § 25-21,262 (Cum. Supp. 2000), which provides that, "[e]xcept as specifically provided in sections 25-21,254 to 25-261, such sections do not affect the regulatory authority that any department or agency has to require any action associated with the information disclosed."
Section 25-21,261(1) applies to exempt a person from civil penalties where timely disclosure has been made and appropriate corrective action taken. The disclosure must be made within sixty days of the date the violation comes to light through a voluntary self-audit. See Neb. Rev. Stat. §§ 25-21,260 and 25-21,261(1) (Cum. Supp. 2000). Section 25-21,261(1) specifically addresses what corrective action will be deemed appropriate in the event the violation is a failure to obtain a permit. In such a case, "appropriate efforts to correct the noncompliance may be demonstrated by the submission of a complete permit application within a reasonable time and a permit for such activities is subsequently issued by the agency."
Neb. Rev. Stat. § 25-21,259 (Cum. Supp. 2000), dealing with instances where an environmental audit is admissible in evidence, includes a similar provision. According to paragraph (1)(a)(ii) of that section, an environmental audit will be admissible if the person failed to take appropriate steps to remedy the problem. In the case of operating without a necessary permit, what is required is the completion of the permit application within a reasonable time.
In our view, Neb. Rev. Stat. §§ 25-21,261(1) and 25-21,259
do not address the availability of injunctive relief during the interim between the discovery of the violation and the obtaining of a permit. Section 25-21,261(1) addresses civil penalties only, and section 25-21,259 has to do with the admissibility of the audit. Neither section would prevent the regulatory agency from obtaining any injunctive relief authorized by law; provided the agency is able to make a case for such relief.
The agency may encounter practical difficulties, however, since the environmental audit law may preclude the use of certain evidence. The auditor and any potential witness to whom the audit results were disclosed may be ineligible to testify. See Neb. Rev. Stat. §§ 25-21,256(2) and 25-21,257 (Cum. Supp. 2000). Also, in its quest for an injunction the regulatory agency may need to establish that its evidence has been obtained from sources independent of the environmental audit. See Neb. Rev. Stat. §25-21,258(5) (Cum. Supp. 2000).
 II.
You next ask whether an environmental audit is subject to disclosure under the Public Records Act. We assume that your inquiry is directed at audits which come into NDEQ's possession as a result of Neb. Rev. Stat. § 25-21,256(1)(b) (Cum. Supp. 2000), a paragraph which gives a regulatory agency the authority to obtain and review such audits "for the limited purposes of determining if the audit exists and if any exceptions to the liability provisions of sections 25-21,254 to 25-21,264 exist with respect to the audit." We have not considered written notices of possible violations, as described in Neb. Rev. Stat. § 25-21,260 (Cum. Supp. 2000), as being encompassed by your query, since such notices are distinct from the audits which give rise to them.
The Nebraska Public Records statutes generally allow interested persons in Nebraska the right to access public records in the possession of public agencies. Neb. Rev. Stat. §§ 84-712
to 84-712.09. Do the limitations of § 25-21,256 on the uses to be made of the audit or the testimonial and evidentiary protections afforded by the environmental audit statutes, generally, create an exception to the usual rule of accessibility?
Neb. Rev. Stat. § 84-712.01 (Cum. Supp. 2000) provides that public records do not include particular information or records which another statute expressly provides shall not be made public. This does not mean that those exact words must be used. For example, in Orr v. Knowles, 215 Neb. 49, 337 N.W.2d 699 (1983), the court considered whether Neb. Rev. Stat. § 28-347(2) (Cum. Supp. 1982), a statute directing that the court maintain confidentiality as to certain legal proceedings involving a minor who is seeking an abortion, was an exception to the Public Records statutes and statutory "open courts" provision. The court concluded that it was, citing 28-347's confidentiality directive, and language in other statutes which accorded confidentiality to information on certain prescribed forms which were apparently related to such legal proceedings in some way.
The focus of the environmental audit law, though, is more on protecting against evidentiary use of the information in the audit than it is upon preserving the confidentiality of the audit. In fact, when it started to wend its way through its last legislative course, the bill repeatedly referred to "confidentiality protections" and included a section which would have made it a crime for a public employee or official to divulge or disseminate all or part of the information in an audit. These things were eliminated prior to passage. Also, the evidentiary protections are qualified; that is, there are various conditions which must be met to secure and retain the protections. The statutes do not expressly provide that the audits shall not be made public. Therefore, assuming an audit which is in the possession of a regulatory agency pursuant to Neb. Rev. Stat. § 25-21,256 would be considered to be a record of, or belonging to, the state (see Op. Att'y Gen. No. 97033 (June 4, 1997)), it is believed that it would be subject to disclosure pursuant to a Public Records Act request.
A comment made during legislative debate on the bill gave us some pause. When addressing the amendment which struck the "confidentiality" language and eliminated the penalty for disclosure, Senator Priester, the bill's most vocal opponent, expressed concerns about the continuing inability to use the audits to prove wrongdoing. During this discourse he stated, "Also these documents would not become public records. DEQ could still only see them to determine whether or not any exceptions apply. . . ." Floor Debate on LB 395, 95th Neb. Leg., 2nd Sess. 14613. This remark obviously is at odds with our conclusion. However, there is no indication that the environmental audit law was intended to change the public records act. Also, the legislature is presumed to know existing law and could have readily inserted a provision stating that such audits were not to be made public. Finally, even if a court would resort to the floor debate, it is questionable whether much weight would be given to the isolated statement of a single senator made during the give and take of legislative discourse. It may not represent the intent or belief of the
Legislature as a whole. A good discussion of the potential error into which one may be drawn by such attempts at divination may be found in Omaha Public Power Dist. v. Nebraska Dept. of Revenue,248 Neb. 518, 532-36, 537 N.W.2d 312, 321-23 (1995) (Caporale, J., concurring).
Sincerely,
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
_________________________ Attorney General